## GOLAS *v.* GOLAS

[No. 555, September Term, 1966.]

*Decided October 12, 1967.*

622

The cause was argued before HAMMOND, C. J., and HOR-NEY, OPPENHEIMER, McWILLIAMS and FINAN, JJ., and CLAPP, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Noah A. Hillman,* with whom was *Michael Demyan* on the brief, for appellant.

*Alexander Stark,* with whom was *Victor H. Savadow* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This skirmish in the war between men and women is the upshot of a wife's friendship for another woman. The parties were married in 1951. Their only child is a girl, now 13. Until their separation they lived in publicly owned quarters at Friendship International Airport where the appellant (Golas) is the fire chief. From time to time during 1963 and 1964 Golas upbraided his wife (the appellee) for being so much in the company of the friend (Mrs. Littleford). These occasions usually ended in a quarrel garnished, at times, with violence. She testified she often had cuts and bruises as a result of his beatings. As he tells it, the cuts and bruises were sustained in his defense against her assaults upon him and he insists she bruises easily. She would get so mad, he testified, she would put her fist through a window. They quarreled for the last time on 9 July 1964 when Golas ordered her to remove Mrs. Littleford's car from their driveway. She did so but she took the child with her and that night moved in with the Littlefords. A few months later the wife's mother (Mrs. Barrett) rented a house near the Littlefords in which she installed her daughter and the child. Mrs.

Barrett had a full-time job which made it difficult for her to care for her invalid husband so she moved him in with the appellee, an arrangement which seems to have suited everyone except Golas.

A few weeks after his wife's departure he filed a bill for a divorce a mensa. Within a month she countered with a cross-bill alleging "acts of cruelty and vicious conduct" and asking for alimony, support, counsel fees, custody of the child, and an order restraining him from making use of funds deposited in a building and loan association. In the succeeding months Mrs. Barrett tried to effect a reconciliation but she said she "just couldn't get those two loggerheads together." Golas extended the olive branch several times but she refused to return on "his terms." He said the only answer he ever got from her was that she didn't "know what to tell Judy [Mrs. Littleford]" or that she wanted time to think it over. One night in December 1964 he took the daughter out to dinner. When he brought her home his wife invited him to come into the house. About 5 minutes later Mrs. Littleford came in. They had words. Mrs. Littleford broke his nose and chased him out of the house with a broom. He obtained a warrant for her arrest. Later that night the wife telephoned him and offered to "come back home" if he would drop the charges against Mrs. Littleford. He did so but she did not come home. She wanted "more time to think it over," he said.

In January 1966 Golas filed a supplemental bill asking for a divorce a vinculo alleging desertion. Judge Sachse, before whom the case was tried on 20 April 1966, dismissed the supplemental bill and ordered Golas to pay permanent alimony, support and a counsel fee. He awarded the custody of the child to the wife and he ordered Golas to pay to his wife "one-half of the net proceeds received * * * from the sale of real estate owned by them as tenants by the entireties." Golas has appealed.

## I.

We think it is unnecessary to consider whether Golas has made out a case against his wife. We have been unable to discover in the rather voluminous record the corroboration required by Maryland Rule S75. The dismissal of his supplemental bill was correct.

624

## II.

The next assignment of error springs from the well settled rule that permanent alimony may not be awarded unless the complainant shows grounds sufficient to support a decree of divorce, either a vinculo or a mensa. *Levy v. Levy,* 229 Md. 103, 181 A. 2d 663 (1962) ; *Russell v. Russell,* 224 Md. 329, 167 A. 2d 770 (1961). The wife referred generally to the mental and physical "torment" Golas had inflicted upon her. She said she had gotten "many beatings from him." She told of specific beatings during 1964. On one occasion, she said, she was so upset from a beating that she had to see her doctor the next morning. She "had a spell" in his office and he had to give her adrenalin. She has a "heart condition" for which the doctor prescribes Quinidene. On another occasion after "he beat * * * [her] up quite a bit" she left home and went to her friend's house. Mrs. Littleford wiped the blood off of her face and applied plastic bandages to her cuts. She said he struck her before she left on 9 July. She indicated she would not return to the marital domicile unless "he changed" because she "certainly couldn't go on with his fighting and arguing over every little thing."

The corroboration required by Rule S75 was provided, we think, by the testimony of Mrs. Littleford and the parties' daughter. Mrs. Littleford said Golas came to her house one night, got her out of bed and told her "he just beat the devil out of" his wife and "ordered * * * [Mrs. Littleford] to tell * * * [his wife] to keep off of" the Littleford property. The next day she saw the appellee and "she was bruised" and her face was cut. She spoke also of the time the appellee came to her home bruised and bleeding. "She needed a doctor's attention" but she [Mrs. Littleford] could not persuade her to do anything about it. The daughter testified that she often heard her parents "hollering" at each other and that "usually it was at night." She remembered that "sometimes Mom had bruises on her arm."

Judge Sachse had the advantage of seeing and hearing the witnesses and, obviously, he chose to believe the testimony of the appellee, her daughter and Mrs. Littleford. We have said many times that any conduct on the part of the husband that endangers, or creates a reasonable apprehension that it will end,

in endangering, his wife's health to a degree rendering it physically or mentally impossible for her properly to discharge the marital duties constitutes the cruelty that is cause for divorce. *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810 (1954) ; *Scheinin v. Scheinin,* 200 Md. 282, 89 A. 2d 609 (1952) ; see also cases cited in M.L.E., *Divorce,* § 14. While a different conclusion might well have been reached on this record we are unwilling to say that Judge Sachse was clearly wrong in his decision. *Scheinin v. Scheinin, supra.*

Neither in his brief nor in his argument before us did Golas complain of those parts of the Chancellor's decree (a) granting the care and custody of the little girl to the appellee, (b) ordering the payment of $17.50 per week for her support, and (c) ordering the payment of $300 to appellee's attorney. In any event, in these circumstances, we see no reason for disturbing the Chancellor's orders in regard to custody, support and counsel fee.

### III.

We must agree with Golas that Judge Sachse was without authority to order the division of the proceeds of sale of the realty owned by the parties as tenants by the entireties. Code, Art. 16, § 29; *Bauman v. Bauman,* 239 Md. 379, 211 A. 2d 759 (1965) ; *Smith v. Smith,* 227 Md. 355, 176 A. 2d 862 (1962).

> *Decree reversed in part and affirmed in part and case remanded for the passage of a decree to conform with this opinion.*
> *Appellant to pay the costs.*