## BONNIE J. FLANAGAN *v.* RAYMOND J. FLANAGAN

[No. 487, September Term, 1971.]

*Decided March 8, 1972.*

650

The cause was argued before ANDERSON, ORTH and GILBERT, JJ.

*William W. Grant*, with whom was *Mary Ellen Brooke* on the brief, for appellant.

*John F. Lillard, Jr.*, for appellee.

GILBERT, J., delivered the opinion of the Court.

Raymond J. Flanagan, (husband), sued Bonnie J. Flanagan, (wife), in the Circuit Court for Prince George's County for a divorce *a vinculo matrimonii* on the non-culpatory ground of five years uninterrupted separation. Article 16, § 24. The wife filed a general denial to the husband's complaint and she affirmatively, by way of a cross-bill, sought a decree for separate maintenance, alimony *pendente lite* and counsel fees, on the ground of the husband's desertion. The wife requested that the matter be heard on the question of alimony *pendente lite*. However, the matter was referred to a Master in Chancery who heard the testimony on the merits, over strenuous objection, and made his recommendations to the Chancellor. The wife filed timely exceptions to the Master's report. The husband's solicitor sought and obtained an order that the exceptions not be heard *de novo*, but that the matter be disposed of on the record taken before the Master. Subsequently the Chancellor overruled the exceptions and adopted the report of the Master *in toto* and signed a decree giving effect to those recommendations.

The Master's report recommended, *inter alia*, that (1) the husband's prayer for divorce be granted; (2) the cross-bill of the wife be dismissed; (3) that the wife be denied alimony. The report was silent as to counsel fees for the wife's solicitors. The aggrieved wife filed an appeal to this Court alleging:

1. That in accordance with the provisions of the Rules then in effect in the Seventh Judicial Circuit, the Master had no jurisdiction to hear a contested divorce case and a contested right to alimony.

2. That the Chancellor erred in holding, on the basis of the recommendations of the Master, that the appellant had not established a right of alimony based on desertion.

3. That it was error not to allow the wife to amend her cross-bill so as to allege adultery.

4. That the Chancellor erred in not awarding alimony *pendente lite* and permanent alimony.

5. That the Chancellor erred in overruling the wife's exceptions to the Master's report and in issuing a decree without any notification to the wife of the court's order overruling the exceptions, or of its decree.

6. That the court erred in not allowing counsel fees to the wife's solicitor.

The parties were married in Winchester, Virginia, on January 21, 1950. No children were born as a result of the union. The husband at the time of the marriage, and for some time thereafter, was an officer in the United States Air Force, and he and his wife lived together at various military bases. The husband and wife purchased a residence in Grantsville, Garrett County, Maryland, that had formerly belonged to the wife's family. The purpose of the purchase was to assure the parties a home at the time of the husband's retirement from the service. The husband's last duty station before retirement was at Andrews Field, Prince George's County, Maryland. The wife was working in the District of Columbia in graphic arts when the husband retired in August of 1962. At that time the husband moved to Grantsville and the wife continued to work in the Washington area and went to Grantsville on weekends.

The testimony established that the husband's net retirement pay was $447.00 per month. The wife's testimony was that this sum was not sufficient to sustain both the husband and wife, and the wife was required to work

in order to support herself. Her income as of the end of 1964 was $83.00 per week, gross. In December of 1964, the wife became ill and was required to resign her employment and move to Grantsville. The husband, some time in late 1964, but before the wife moved to Grantsville, returned to Prince George's County and obtained employment with the United States Census Bureau. We are unable to determine the husband's precise income at the time of the hearing because he correlated the net retirement pay from the Air Force with gross earnings of $10,000.00 per year from the Census Bureau. It is safe to say, however, that the husband's gross income was in excess of $15,000.00 per year.

The testimony of the husband and of his witness demonstrated that the husband was living with a woman named "Ruth," and had been so living for a period of a few years prior to the filing of the bill and cross-bill herein. When the husband moved to the Washington metropolitan area, he kept his address a secret from his wife and required her to contact him through a post office box.

The husband, prior to the decree of divorce, continued to make the payments on the mortgage of the house in Grantsville and to pay the taxes and utilities thereon. He also voluntarily provided to the wife the sum of $50.00 per month living expenses. The wife's testimony was that her expenses were $385.00 per month and that she had no income. At oral argument, we were advised that the payment of the $50.00 per month ceased upon the signing of the decree and that the wife was now receiving public assistance.

The testimony before the Master failed to establish the corroboration necessary to sustain the wife's cross-bill on the ground of desertion and the Master refused to allow the wife to amend her cross-bill so as to allege adultery.

Appellee filed a motion to dismiss the appeal on the ground that it was "specious and without merit." We disagree and can find no justification for invoking Rule

1035 or 1036 and shall accordingly deny the motion to dismiss.

#### 1.

Rule S 80.b. of the Seventh Judicial Circuit provided: [1]

> "The Clerk of Court shall refer to the Master for Domestic Relations Causes the following actions in which a hearing has been requested: a Bill or Petition (i) for alimony *pendente lite;* or for support, custody and visitation of children *pendente lite,* or for initial counsel fees; (ii) for modification of existing orders or decrees to increase or decrease the amount of alimony or child support, or to change the custody of minor children or provisions for child visitation; (iii) for divorce, annulment or separate maintenance in which there is a decree *pro confesso* or where the action is at issue as a result of an answer having been filed but in which there is no actual contest and where the parties have not specifically requested a hearing before the Court; (iv) originally seeking separate maintenance, alimony or child support wherein it is the amount thereof and not the right thereto that is actually contested."

We think that under the factual situation here present, there was an "actual contest" within the meaning of the Rule. We believe the words "actual contest", as embodied in Rule S 80.b., are used to distinguish those instances where a general denial is filed *pro forma* from those in which a general denial is filed and the plaintiff's cause is really challenged. Here, the general denial of the appellant, coupled with her cross-bill for separate maintenance (which was contested by the appellee) was sufficient to place the Clerk of the Court, as well as the Master, on notice of such an actual contest. Counsel for the appellant advised the Master on the day of, but prior

---

1. Rule S 80.b. was revised as of Dec. 1, 1971.

to, the taking of testimony, that "* * * we are contesting the divorce." This statement gave the Master additional notice. We think the Rule of the Seventh Judicial Circuit was violated and that the Master was without jurisdiction to hear the controversy.

Having determined that the Master lacked jurisdiction to hear the contested divorce case, ordinarily we would stop here and remand for further proceedings. However, we deem it advisable to invoke Rule 1085 and discuss for the further guidance of the trial court the other questions involved in order "to avoid the expense and delay of another appeal."

### 2. and 3.

Article 16, § 24 provides:

> "Upon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii for the following causes, to wit: * * *; seventhly, on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for five years. A plea of res adjudicata or of recrimination with respect to any other provisions of this section shall not be a bar to either party obtaining a divorce on this seventh ground."

The other provisions of the seventh ground not herein quoted were held to be unconstitutional by this Court. *Buckheit v. Buckheit*, 10 Md. App. 526, 272 A. 2d 54 (1970), cert. denied March 9, 1971. Our interpretation of the seventh ground set out in § 24 leads us to the conclusion that whether the appellee had committed the marital offense of adultery or desertion is of little, if any, consequence here. We think the legislative purpose implemented by the enactment of the seventh ground for divorce under Article 16, § 24, was to preclude a party from perpetually preventing his or her spouse from obtaining a decree of divorce *a vinculo matrimonii*.

The appellant's cross-bill alleging desertion, an allegation which the record discloses she failed to sustain, or the revelation in the testimony of the appellee's adultery, are both grounds for divorce if proven, but are not in law sufficient to defeat the non-culpatory five year uninterrupted separation. Assuming that the husband had proven his cause of action, and further assuming that the wife had proven desertion or adultery, it would be incongruous to ban recrimination as a defense under the five year statute, and at the same time allow the wife to prevail. Such action would defeat the legislative purpose. The language of the seventh ground that "res adjudicata" and recrimination "shall not be a bar to either party obtaining a divorce on this * * * ground" precludes that possibility.

We find the appellant's second and third contentions to be without merit.

In *Zell v. Zell,* 12 Md. App. 563, 280 A. 2d 22 (1971), we held that the doctrine of recrimination is still alive in this State, but that recrimination is not available as a defense to a divorce action based upon a voluntary separation. *Matysek v. Matysek,* 212 Md. 44, 128 A. 2d 627 (1957) ; *Hughes v. Hughes,* 216 Md. 374, 140 A. 2d 649 (1958). The five year separation is similar to the eighteen month voluntary separation in that both are non-culpatory. We think it follows that if recrimination is not available on the voluntary separation action, it is *a fortiori* not available in the five year separation cause especially since the statute avers in so many words that it shall not be a defense.

4.

During a discussion on the question of alimony before the Master, the following colloquy occurred:

"BROOKE: The first point being whether or not in a no fault statute, if the wife still has the right to alimony.

MASTER: I say she can not."

The Master then seemingly concluded that in order to arrive at alimony, you must first arrive at fault, and inasmuch as the five year separation is a non-culpatory cause, no fault can be attached and, therefore, no alimony can be awarded. We do not agree with such sophistic reasoning.

Article 16, § 3 of the Maryland Code provides:

> "In cases where a divorce is decreed, alimony may be awarded."

Paragraph (a), § 5 of Article 16 states:

> "*In all cases* where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." (Emphasis supplied).

The use of the phrase "in all cases" by the legislature in enacting § 5 implies to us that the General Assembly intended those words to have their natural and literal meaning. *Ergo,* a trial court is empowered to grant alimony to a wife free of fault in all cases where it is claimed, needed, and where a divorce is decreed. Of course, alimony may also be awarded in an action for separate maintenance. See *Winkel v. Winkel,* 176 Md. 167, 4 A. 2d 128 (1939); *Foote v. Foote,* 190 Md. 171, 57 A. 2d 804 (1948); *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536 (1953); *Moran v. Moran,* 219 Md. 399, 149 A. 2d 399 (1959); *Jackson v. Jackson,* 13 Md. App. 725, 284 A. 2d 654 (1971).

This Court, speaking through Chief Judge Murphy, in *Quinn v. Quinn,* 11 Md. App. 638, 276 A. 2d 425 (1971), said of alimony at pages 643-644:

> "It is thus altogether plain that alimony is not to be awarded as a punitive measure. *Bowis v. Bowis,* 259 Md. 41. Rather, it is an allowance to the wife in recognition of the husband's com-

mon law liability to support her; it is an allowance of money payable at stated periods by the husband to the wife for her support during their joint lives so long as they live apart. *Fairbank v. Fairbank,* 169 Md. 212. In other words, the sole object of the alimony award is to provide an allowance to the wife for food, clothing, habitation, and other necessities. *Dougherty v. Dougherty, supra,* [187 Md. 21], *Hood v. Hood,* 138 Md. 355. It was held in *Waters v. Waters,* 191 Md. 436, that in determining an award of alimony and whether, under the statute, the wife's income 'is insufficient to care for her needs,' the court should consider the husband's wealth and earning capacity, the assets and income of the wife, the station in life of the parties, their age, physical condition, and ability to work, the length of time the parties lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. To the same effect, *see Burton v. Burton,* 253 Md. 233; *Newmeyer v. Newmeyer,* 216 Md. 431."

The Chancellor approved the findings based upon the Master's obvious belief that inasmuch as under the non-culpatory type of divorce there is no showing of the fault which destroyed the home, the appellant would be entitled to no alimony. *Quinn* does not say that where there is a non-culpatory type of divorce, and hence no finding of fault, that alimony may not be awarded. *Quinn* merely reiterates factors that a trial court should consider in awarding alimony. Patently, in a non-culpatory type of action, fault is not one of the factors to be weighed. It was held in *Hughes v. Hughes,* 216 Md. 374, 140 A. 2d 649 (1958), that a wife may be entitled to alimony even where a divorce on the ground of voluntary separation is granted to the husband. See also *Foote v. Foote, supra.*

Appellee argues that because the appellant failed to show any ground to support a divorce either *a vinculo matrimonii* or *a mensa et thoro* that she is not entitled to alimony. He relies upon *Stein v. Stein,* 251 Md. 300, 247 A. 2d 266 (1968). The facts in *Stein* are, however, inapposite. There, Mrs. Stein filed a bill of complaint alleging constructive desertion. Mr. Stein cross-billed on the ground of desertion. The Chancellor dismissed Mrs. Stein's bill and granted a divorce *a mensa et thoro* to Mr. Stein. No appeal was taken. In 1967, Mr. Stein filed for a divorce *a vinculo matrimonii* based upon the prior decision. Mrs. Stein then sought alimony even though it had been adjudged in the previous proceeding that she had no justification for having left the marital domicile. The Court of Appeals said:

> "The doctrine that there can be no grant of permanent alimony unless the wife can show grounds sufficient to support a decree of divorce, either *a vinculo* or *a mensa,* is so well established it ought not be necessary to reiterate it. *Golas v. Golas,* 247 Md. 621, 233 A. 2d 804 (1967) ; *Levy v. Levy,* 229 Md. 103, 181 A. 2d 663 (1962) ; and *Russell v. Russell,* 224 Md. 329, 167 A. 2d 770 (1961). Appellant urges upon us that we should relax this absolute rule. Such relaxation must come, if it is to come, from the General Assembly."

The rationale of *Stein* is not applicable to a non-culpatory type of divorce proceeding, and does not prohibit the award of alimony in such an action. We think it patent that when the legislature enacted Chapter 656, Acts of 1969, creating the seventh ground for divorce, they did not intend that a husband could, at the expiration of five years uninterrupted separation from his spouse, obtain a divorce and where the wife is impecunious, infirm or unemployed, totally escape support of the wife and thrust upon the public the burden of providing for his then former spouse.

## 5.

The exceptions filed by the appellant to the report of the Master should not have been overruled because, *inter alia,* the Master was without jurisdiction in the first instance for the reasons set forth under No. 1 herein. We perceive no reason under the circumstances of this case to rule upon the question of notice, or lack thereof, to counsel inasmuch as the matter is being remanded for further proceedings, thus rendering the question of notice moot.

## 6.

Article 16, § 5 (a), set forth in full *supra,* provides that the wife shall not be entitled to counsel fees unless there is a showing that her income is insufficient to care for her needs. Here, the testimony was that she received no income other than from her husband.

The Court of Appeals in *Lopez v. Lopez,* 206 Md. 509, 520-521, 112 A. 2d 466 (1955), held:

> "In determining the amount of the counsel fee to be paid by the husband to the wife's solicitor, the court should take into consideration the financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will afford the wife an efficient presentation of her side of the controversy. As in the case of alimony, the amount of the award is within the discretion of the chancellor and, while his discretion is subject to review by the Court of Appeals, the award should not be disturbed unless his discretion was exercised arbitrarily or his judgment was clearly wrong. *Bennett v. Bennett,* 197 Md. 408, 416; 79 A. 2d 513."

See also *Mullinix v. Mullinix,* 12 Md. App. 402, 278 A. 2d 674 (1971).

Appellee argues that the wife was financially able to

employ counsel and that, therefore, the husband should not be required to pay the wife's solicitor. The record before us, however, is vividly clear and indicates that the wife was without means to pay counsel and the denial of counsel fees under the circumstances here present was a manifest abuse of discretion, arbitrarily exercised, and clearly wrong.

> *Decree vacated and case remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by the appellee.*