JESSIE C. FLOOD *v.* IDA MAE FLOOD

[No. 83, September Term, 1972.]

*Decided October 25, 1972.*

The cause was argued before MORTON, ORTH and GIL-BERT, JJ.

*Paul Smelkinson,* with whom were *Walker & Smelkinson* on the brief, for appellant.

*Barbara F. Marks* for appellee.

GILBERT, J., delivered the opinion of the Court.

Jessie C. Flood was granted a divorce *a vinculo matrimonii* in the Circuit Court of Baltimore City, from Ida Mae Flood, on September 2, 1971. The decree of divorce provided that the appellant was to pay child support, including arrearages, and permanent alimony, accounting from the date of the decree.

The husband, appellant here, attacks only that portion of the decree awarding alimony to the wife and presents the question of whether *vel non* a court of equity may *sua sponte* award alimony to a wife who has neither claimed nor demonstrated a need for it.

The husband filed a "Second Amended Bill of Complaint"[1] alleging the statutory five year separation provision. Md. Ann. Code art. 16, § 24. Process was served upon the wife's then counsel of record by the Sheriff of Baltimore City on November 21, 1969.[2] No answer was filed by the wife.

---

1. The original Bill of Complaint was filed June 22, 1964, and the first Amended Bill was filed April 9, 1967. The wife filed an answer to each.

2. We were advised at oral argument that appellee's then counsel was allegedly unable to obtain any response or cooperation from the appellee despite his efforts to do so.

Approximately 7 months later, on June 15, 1970, a decree *pro confesso* was passed and the matter was referred to an examiner-master in chancery in accordance with the practice in Baltimore City. Testimony was heard by the examiner-master on August 9, 1971, a period of lapsed time approximating 14 months following the entry of the decree *pro confesso,* and approximately 32 months from the date of service of process.

At the hearing before the examiner-master, the following transpired:

\* \* \*

"BY THE EXAMINER—TO THE PLAINTIFF:

\* \* \*

"Q Have there been any other Court cases between you and your wife relating to divorce, annulment, alimony or support, other than these proceedings which were begun back in 1964?

A Yes.

Q What?

A Support.

Q Are you presently under an Order to support the children or not?

A Yes.

\* \* \*

"Q When was the Order entered against you?

A Just a minute.

Statement by the Examiner:

Let the record show that Mr. Flood has handed me a card from the Probation Department indicating that he is required to pay $51.50 a week for his wife and two children, plus $4.00 a week on arrearages of $511.00, and the first payment was due January 25, 1971.

EXAMINER TO PLAINTIFF:

Q Do I understand, Mr. Flood, that you have

been making these payments since January, as you were supposed to?

A Just about.

Q Have you been paying the $4.00, too, on the arrearages?

A A majority of the time."

The testimony was received without objection. The ground for divorce having been established to the satisfaction of the examiner-master, he recommended that the wife "* * * have the guardianship and custody of * * * the minor children of the parties * * * in accordance with a prior Order of Court, * * *." The decree embodied the terms of the "Order for Probation" of the Criminal Court of Baltimore as to the amount of the weekly support payment for each child. The total amount of arrearage that had accumulated was to be amortized from the date of the decree and the sum of $4.12 was commanded to be paid thereon each week. The custody and support portion of the decree concluded with the phrase "all subject to the further Order of this Court in the premises."

The part of the decree of the Circuit Court for Baltimore City that is under attack on this appeal reads as follows:

"AND IT IS FURTHER ORDERED, that in accordance with said prior Order, the [husband] shall pay unto the [wife] through said Probation Department, as permanent alimony, the sum of Thirty Dollars and Ninety Cents ($30.90) per week, accounting from the date of this Decree, subject to the further Order of this Court in the premises." [3]

On September 18, 1971, the appellant filed a "Motion

3. The $30.90 figure is comprised of $30.00 for alimony and a 3% service charge that the Supreme Bench of Baltimore City has ordered charged whenever payments are required to be paid through the Probation Department of the Supreme Bench of Baltimore City as a means to "partially defray the cost of handling." Supreme Bench of Baltimore City, Rule BU1 H(1).

To Revise And Correct Decree Of Divorce A Vinculo Matrimonii." The motion challenged the authority of the court to award alimony inasmuch as the wife "did not appear to defend this action and did not demonstrate * * * any need for said alimony payments." He prayed that the decree be "revised and corrected to eliminate any reference to permanent alimony payable to the [wife]." A copy of the motion, together with an order to show cause on or before October 12, 1971 why the relief prayed should not be granted was served on the wife. Subsequently, the wife's present attorney responded to the motion and the matter was set for hearing before the trial court, not the Chancellor who had signed the decree of divorce. Oral argument was heard, but no testimony was taken before the trial judge. However, the judge did have before him the transcript of the evidence presented to the examiner-master.

We were advised at the time of the oral argument on this appeal that the wife was present in the trial court when argument of counsel was heard, and that the wife's solicitor informed the Chancellor of the wife's "needs." A viewing of the wife by the judge does not of itself fulfill the statutory requirement that the evidence must show that the wife's income is insufficient, and it is patent that argument of counsel is not evidence. The Chancellor concluded that the decree was "proper from the point of view of granting alimony."

Md. Ann. Code art. 16, § 5(a) provides:

> "In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs."

The record in the instant case is devoid of any testimony surmounting the statutory prohibition contained in Art. 16, § 5 that the "court shall not award such alimony * * * unless it shall appear from the evidence that the

wife's income is insufficient to care for her needs." The examiner-master heard absolutely no evidence relative to the wife's needs, albeit there was the testimony from the husband that he was under an "order" to pay support to the wife and two children. This "Order for Probation" was signed by a judge of the Criminal Court of Baltimore on January 19, 1971, and was made effective for a period of three years. It provided in pertinent part:

\* \* \*

"6. That said [husband] shall pay, through the Probation Department of the Supreme Bench: a. $51.50 per week to Probation Department for the support of Wife & 2 children (30.90 for Wife—$10.30 each child.

\* \* \*

"8. Pay $4.00 per week on arrs. of 511.00."

A decree of divorce supersedes a support order of the Criminal Court except for outstanding arrearages. The "Order for Probation" is not sufficient, *per se,* to satisfy the statute's mandate that the wife's needs be demonstrated by the evidence. We have held that among the factors a court should consider in determining an award of alimony is the husband's wealth and earning capacity, the assets and income of the wife, the station in life of the parties, the ages of both the husband and wife, their physical condition, their ability to work, the length of time they resided together, as well as the circumstances leading up to the divorce and the fault which destroyed the home. *Renner v. Renner,* 16 Md. App. 143, 294 A. 2d 671 (1972) ; *Flanagan v. Flanagan,* 14 Md. App. 648, 288 A. 2d 225 (1972) ; *Quinn v. Quinn,* 11 Md. App. 638, 276 A. 2d 425 (1971). We do not think the trial court had before it any testimony upon which to predicate an *award of a specific sum of alimony,* and we, therefore, reverse that portion of the decree.

The real crux of this appeal, however, is whether the trial court has the authority under the circumstances

of this case to award any alimony to the wife. We think it does. It is well settled that unless the decree of divorce *a vinculo matrimonii* awards alimony, or reserves jurisdiction, the court is without power to enter a subsequent award of alimony. *Dackman v. Dackman,* 252 Md. 331, 250 A. 2d 60 (1969); *Buehler v. Buehler,* 229 Md. 317, 182 A. 877 (1962); *Staub v. Staub,* 170 Md. 202, 183 A. 605 (1936); *Marshall v. Marshall,* 162 Md. 116, 159 A. 260, 83 A.L.R. 1237 (1932). We think the trial court retained jurisdiction.

This Court, in *Reed v. Reed,* 11 Md. App. 396, 274 A. 2d 652 (1971), held that a wife who did not claim alimony in the original divorce proceeding was entitled to the same even though she asserted her right thereto "approximately fifteen years after the original decree was enrolled." In *Reed,* the decree of divorce did not provide for alimony but stated the "defendant shall be responsible for [the] support" of minor children. The Chancellor had interlineated on the decree the words "this court shall have continuing jurisdiction in these proceedings." Chief Judge Murphy (now Chief Judge of the Court of Appeals of Maryland) said that the use of that phraseology manifested a clear intention on the part of the court "to retain jurisdiction to award alimony in the future if warranted by the circumstances."

Judge Hammond (later Chief Judge), in a concurring opinion in *Johnson v. Johnson,* 202 Md. 547, 560, 97 A. 2d 330 (1953), *cert. denied* 346 U. S. 874, 74 S. Ct. 126, 98 L. Ed. 382, noted the meaning of *Marshall v. Marshall, supra,* and stated:

> "* * * [U]nless an *a vinculo* decree either awards alimony, or reserves jurisdiction, the Court is powerless, after the decree has become enrolled, to award alimony. Under [*Marshall*], if the Court awarded alimony of one cent a year, it could at any time, years later perhaps, require the husband if his circumstances warranted it, to pay $10,000.00 a year. Also, by

> adding four words—'The Court retains jurisdic-
> tion'—alimony could be given for the first time
> 20 years after the decree."

The concurring opinion foretold the happenings of *Reed.*

In the instant case, the decree *a vinculo* concluded both the child custody-support award and the alimony award with the statement "subject to the further Order of this Court in the premises." We think those words, subjecting the decree *a vinculo* to the further order of the court, are equivalent to the phrases "this court shall have continuing jurisdiction in these proceedings" utilized in *Reed,* and "[t]he Court retains jurisdiction" employed in the concurring opinion in *Johnson.*

Here, the husband proved the non-culpatory five year separation as the ground for his divorce. In a non-culpatory type of divorce, either party would be entitled to maintain an action. It logically follows that proof by the husband of a non-culpatory ground for divorce would also be sufficient proof to entitle the wife to the decree. A decree based on a non-culpatory ground does not exonerate a husband from the payment of alimony. *Hughes v. Hughes,* 216 Md. 374, 140 A. 2d 649 (1958) ; *Foote v. Foote,* 190 Md. 171, 57 A. 2d 804 (1948) ; *Flanagan v. Flanagan, supra.*

> *Decree affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion; costs to be paid by appellant.*