## RHOAD *v.* RHOAD

[No. 91, September Term, 1974.]

*Decided January 10, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Henry J. Noyes* for appellant.

No brief filed on behalf of appellee.

Sмıтн, J., delivered the opinion of the Court.

Petitioner, Robert D. Rhoad (the husband), sued his wife, Betty C. Rhoad (the wife), on June 15, 1973, in the Circuit Court for Montgomery County for a divorce *a vinculo matrimonii* on the nonculpatory ground then provided in Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 24 that the parties had "lived separate and apart without any cohabitation and without interruption for five years." [1] The chancellor (Fairbanks, J.) found the husband entitled to a divorce. The wife, however, had requested alimony. After first stating that "the fault [lay] with [the wife] insofar as the dissolution of [the] marriage [was] concerned," that "it was a little difficult for the Court to see how an award of alimony could be made in this case," and that, as a consequence, "the Court decline[d] to make an award of alimony," the chancellor backtracked and said that he would "retain jurisdiction of this matter with respect to alimony," that he was "going to reserve it," since he "want[ed] this matter reviewed at a later time." The retention by the chancellor of the matter of alimony was appealed by the husband to the Court of Special Appeals. That court affirmed in *Rhoad v. Rhoad*, 21 Md. App. 147, 318 A. 2d 551 (1974). We granted the writ of certiorari in order that we might address ourselves further to the question of when alimony may be obtained under this relatively new ground for divorce. We shall reverse the determination by the Court of Special Appeals that the chancellor did not err when he reserved the question of alimony.

The facts are not seriously in dispute. The parties were married in 1943. The two children born of the marriage are adults and self-supporting. The wife left the home of the parties in May, 1967, and has never returned.

---

1. By Chapter 699 of the Acts of 1973 the time required has now been reduced from five years to three years.

The wife apparently had a history of mental problems. She testified that she had had "twenty-three shock treatments" in 1962 or 1963, that she was "miserably unhappy" in her marriage, that in 1967 she felt that she could "cope," and that she then "made the decision to move out and take a job down in Chestertown" in Kent County. Actually, the job was at Great Oaks Lodge which may or may not have a Chestertown post office address but is some distance removed from Chestertown in Kent County. She says she advised her husband as to what she was planning to do and he agreed. In regard to his "agreement," it should be borne in mind that Judge Hammond said for this Court in *Stumpf v. Stumpf,* 228 Md. 350, 179 A. 2d 893 (1962):

> "This Court in *Wood v. Wood,* 227 Md. 211, 216, recently repeated what prior cases had said from time to time in regard to a separation of spouses—'acquiescence to or assent to what one cannot prevent does not amount to a voluntary agreement thereto.' See, for example, *Rhoderick v. Rhoderick,* 224 Md. 478, 481; *Moran v. Moran,* 219 Md. 399, 404; *Courtney v. Courtney,* 213 Md. 600, 602; *Miller v. Miller,* 178 Md. 12, 21." *Id.* at 351.

The husband's version of the wife's leaving the marital abode is that she had left on other occasions, but had remained away only for short periods of time; that in this particular instance he came home from work and found no wife, but a note that she was leaving, that he should not attempt to find her, and that she was going to "a safe area"; that he had no advance notice of her leaving; that he made "innumerable" attempts to persuade her to return; and that these attempts were fruitless. The Court of Special Appeals seized upon this last testimony.

The chancellor said: [2]

"Based upon the case of *Flanagan* [v.] *Flanagan*

---

[2]. The case was decided October 16, 1973. Our opinion in Flanagan v. Flanagan, 270 Md. 335, 311 A. 2d 407 (1973), on certiorari, was not filed until November 21, 1973.

[,] 17 Md. App. [90, 299 A. 2d 520 (1973)], the issue of fault with respect to the dissolution of the marriage is relevant on the matter of the entitlement of a wife to alimony.

"It is not relevant on the issue of a nonculpable divorce.

"Consequently, in this action the Court's determination of any culpability is only to be considered in respect to any award of alimony or failure to make such an award.

"The issue of fault is also only one of the elements which is to be taken into consideration in the award of alimony. There are others.

"In this particular case there is some confusion as to exactly why the marriage broke up and the particular date it did break up.

"There is no confusion or no doubt that at some point thereafter, even though it might have been voluntary at the outset, it became involuntary when Mrs. Rhoad decided she didn't want to come back. Therefore, the fault lies with her insofar as the dissolution of this marriage is concerned.

"Before [sic] is added to this the fact that she has maintained herself for the five years, albeit with some difficulty and with the help of her father who obviously was under no legal obligation to support her but did what any father would do under the circumstances, it was a little difficult for the Court to see how an award of alimony could be made in this case and, consequently, the Court declines to make an award of alimony."

The Court of Special Appeals pointed to Code (1957, 1973 Repl. Vol.) Art. 16, § 26A. This section was originally enacted by Chapter 147 of the Acts of 1965 and amended by Chapter 636 of the Acts of 1968 so that it read:

"In all actions for divorce an offer of reconciliation or an attempt to reconcile by one

spouse without the concurrence of the other spouse shall not be available as a *defense* to a divorce nor in and of itself be a *bar* to a divorce; nor shall the refusal of a spouse to accept an offer of reconciliation made by the other spouse or the rejection by a spouse of any attempt at reconciliation made by the other spouse be available as a *defense* to a divorce nor in and of itself be a *bar* to or a *ground for a divorce."* (Emphasis added.)

The Court of Special Appeals said:

"We believe that, despite the silence of the statute, its rationale in providing that offers of reconciliation are not to be a defense to or a ground for a divorce action, is equally applicable to alimony. We hold that offers of reconciliation are not to be considered with respect to an award of alimony as to an *a vinculo* divorce granted on the ground of voluntary or statutory separation." 21 Md. App. at 156.

Prior to enactment of that statute, case law in Maryland was that a refusal to renew suspended marital relations, without justification, constituted desertion. *Smoot v. Smoot,* 200 Md. 216, 221, 88 A. 2d 465 (1952), and cases there cited. In *Hite v. Hite,* 210 Md. 576, 124 A. 2d 581 (1956), Judge Delaplaine said for the Court:

"We follow the generally accepted rule that where a spouse guilty of desertion offers in good faith, before the expiration of the statutory period of desertion, to resume the marital relationship, the continuity of the period of desertion is interrupted and there can be no divorce, unless the separation was due to the misconduct of the spouse offering the reconciliation and such misconduct still continues. During the statutory period, the door of repentance and return is kept open; and if a party guilty of desertion makes an offer to return in good

faith, the circumstances may be such as to make the deserted party the offender from that time forth." *Id.* at 582.

In *Miller v. Miller*, 178 Md. 12, 22, 11 A. 2d 630 (1940), Judge Offutt observed for the Court that "[t]he duty of attempting to effect a reconciliation was upon the husband who without justification deserted his wife, not upon the wife whom he deserted. *Simmont v. Simmont*, 160 Md. 422, 425, 153 A. 665; 17 Am. Jur. 210, 211."

As enacted by Chapter 147 of the Acts of 1965, § 26A provided:

> "In no action for divorce instituted in this State after the effective date of this Act shall an offer of reconciliation or an attempt to reconcile by one spouse without the concurrence of the other spouse be available as a defense to a divorce nor in and of itself be a bar to a divorce."

In *Jester v. Jester*, 246 Md. 162, 228 A. 2d 829 (1967), Judge Marbury said for the Court of that section:

> "Section 26A states only that an offer of reconciliation not concurred in by the other spouse shall not of itself be a defense or a bar to a divorce. However, it does not relieve a person who has no grounds for obtaining a divorce from the obligation of accepting an offer of reconciliation made in good faith by the other spouse. Refusal of the reconciliation attempt without justification continues to make the spouse refusing guilty of desertion." *Id.* at 170.

We read § 26A as providing that an offer of reconciliation or an attempt to reconcile shall be neither a defense to a divorce nor a bar to a divorce and that "in and of itself [the refusal of an offer of reconciliation or the rejection of an attempt at reconciliation made by the other spouse should not] be a bar to or a ground for a divorce." That statute was last amended in 1968, prior to provision for this nonculpable

ground for divorce by Chapter 656 of the Acts of 1969. We do not read § 26A as meaning that in determining the fault that destroyed the home for the purpose of alimony where divorce is obtained on a nonculpable divorce ground, not in a suit for divorce or alimony on a culpable ground, the party deserted should not be permitted to offer evidence of his attempts to effect a reconciliation as bearing upon that fault. If the General Assembly had a contrary intent, it should so state.

In *Flanagan v. Flanagan*, 270 Md. 335, 311 A. 2d 407 (1973), we had before us for the first time the issue of alimony under this nonculpable ground. After a thorough review of the Maryland cases on alimony, Judge Digges said for the Court:

> "[I]n those suits in which the actions of the party seeking [alimony] constitute the sole cause for the demise of the marriage, and this wrongdoing consists of acts which are either adultery or abandonment, then, except in rare instances where there exist extremely extenuating circumstances, the award of any alimony would be an abuse of discretion." *Id.* at 341.

It follows that if an award under such circumstances would be an abuse of discretion, then the reservation of the question of whether alimony should be granted would be an equal abuse of discretion. This is true because the only purpose of such a reservation would be to permit an award of alimony at a later date. Whether the *conduct* of the parties entitles the wife to alimony must be viewed as of the time of the decree using the criteria of *Flanagan*. Of course, if the chancellor were to find in a given situation that the wife was entitled to an award of alimony were she in actual financial need of it but as of the time of the decree she had no such need, he could make a determination of her legal eligibility and reserve making a monetary award until a time when her financial circumstances justified such award.

The clear and uncontroverted evidence in this case was that the wife was guilty of abandonment, thus that the fault

which destroyed the home was hers. This is true whether one takes the husband's version that he had no advance notice that his wife was leaving and that he did not agree to her leaving or whether one takes the wife's version that she left on a "trial basis" to which the husband agreed, and that she refused to return when requested to do so by her husband on a number of occasions. This case is not one of those "rare instances" contemplated in *Flanagan* since no "extremely extenuating circumstances" were presented justifying an exception to the rule enunciated in that case. Accordingly, the wife is not entitled to alimony in this proceeding and the chancellor erred when he reserved a determination of the question.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with instructions to reverse that part of the decree of the Circuit Court for Montgomery County which reserved the question of alimony; petitioner to pay the costs.*