## JOY A. MEYER *v.* JOHN E. MEYER

[No. 381, September Term, 1978.]

*Decided December 7, 1978.*

The cause was argued before MOORE, MASON and COUCH, JJ.

*Conrad W. Varner,* with whom was *Russell R. Marks* on the brief, for appellant.

*Kenneth J. Mackley,* with whom were *Mackley & Gilbert* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Joy A. Meyer, appellant, files this appeal feeling aggrieved by the action of the Circuit Court for Washington County in granting her former husband's petition for revocation of alimony.

It is apparent that the relevant facts are not in dispute. Following a marriage of 23 years, during which six children were born to the parties, appellant was granted a divorce a vinculo matrimonii (1974) on the grounds of appellee's adultery. The decree also awarded appellant $150.00 per month alimony, and a similar amount for each of the two children who were minors at that time. Three of the parties' six children lived with appellee after the divorce. Nearly two years later (1976), the court increased both the alimony and child support to $175.00 per month each because of appellant's increased expenses and because support for one child had ceased when he reached majority. In October of 1977 appellant began living with a man to whom she is not married. This man contributes $200.00 per month for household expenses. The three youngest children of the litigants, including a minor son, also continue to live in this household. Thereafter, appellee filed a petition for revocation of alimony on the grounds that appellant was working and receiving a weekly wage sufficient to meet her needs, and because of the fact that she is living with another man to whom she is not married, with her minor son also residing in that household.[1]

---

1. We observe that appellee did not seek a modification of the decree so as to obtain custody of his minor son.

After a full hearing, the chancellor ordered appellee to be relieved of alimony payments on dual grounds:

"(1) Mrs. Meyer appears to be better off financially to receive $200.00 a month from her paramour than to receive $175.00 per month alimony, and

(2) She is exposing her minor child to the scene of living with her paramour."

On appeal, appellant presents two questions:

(1) Whether appellant's cohabitation with a man to whom she is not married in the presence of her 17 year old son constitutes sufficient grounds for revocation of alimony.

(2) Whether the lower court erred in revoking appellant's alimony on financial grounds where appellee's income had increased 35% and where appellant's income without alimony is less than her monthly expenses.

Appellant argues, and we agree, that the chancellor's real concern was whether her post-divorce conduct was a sufficient ground for revocation of her alimony. The parties stipulated that appellant's demurrer to appellee's petition was overruled by the court on the ground "that the petitioner was not required to pay alimony to the respondent because she was living with a man to whom she was not married. . . ." The record also shows that the chancellor, in his "Opinion and Order of Court" following a hearing on the merits, mainly considered the post-divorce conduct issue, although he did mention the financial picture to some extent, at least so far as income was concerned. We also note that the chancellor specifically cited the fact that appellant was "exposing her minor child to the scene of living with her paramour" as a ground for granting the relief sought by appellee. From the above, we have no difficulty concluding the chancellor's real concern was with appellant's post-divorce conduct, and we shall address this question first.

We deem it appropriate first to quote Judge Prescott, later Chief Judge, when he spoke for the Court in *Courson v. Courson,* 213 Md. 183, 185-86, 129 A. 2d 917, 918-9 (1957), and outlined the history of alimony and how it had been dealt with in this State before reaching the specific issue involved in that case. Judge Prescott stated:

"From the time of Foliamb's case (44 Eliz.), 3 Salk. 138, (about 1602) until the divorce act of 20 and 21 Vict. ch. 85 (about 1857), no absolute divorce could be judicially granted in England. The only legal separation recognized was a divorce from bed and board upon a decree of the Ecclesiastical Court. These Courts, as an incident to the decree, granted alimony, temporary or permanent, but only as a part of the decree *a mensa et thoro.* Alimony, therefore, under the English law had no independent existence, and no Court, not even the Ecclesiastical, could grant alimony when it was the only relief sought. This doctrine was adopted and followed in the early decisions of many of the States in this country, but not in Maryland.

During the short existence of the Republic in England (1649-1660), after the first King Charles was beheaded, the Ecclesiastical Court was abolished; and, as a result, for at least until the restoration of the monarchy, the entire jurisdiction in all cases of alimony and of separate maintenance devolved, as a matter of necessity, upon the Court of Chancery. In Maryland, there never was an Ecclesiastical Court; therefore the High Court of Chancery (or the Court of Ordinary) always had, even under the Provincial Government, entire jurisdiction of claims for alimony, or separate maintenance, from the husband based on his misconduct. Apparently, at that time this misconduct was limited to adultery and cruelty. *Galwith v. Galwith,* 4 Harris & McH. 477 (a case wherein the Lord Proprietary of Maryland presided); *Hewitt v. Hewitt,* 1 Bland 101; *Helma v. Franciscus,* 2 Bland

544, 565. In 1777, by legislative enactment (now Sec. 14 of Art. 16 of the Maryland Code)[2] the courts of equity of this State were given specific authority to hear and determine all causes for alimony.

From the earliest times in this State, divorces were granted by, and emanated from, the legislature; but an attempt by the legislature to grant alimony was held to be a judicial function and therefore unconstitutional. *Crane v. Meginnis,* 1 Gill & J. 463, 474. In 1841, the legislature granted jurisdiction of all divorce actions to the courts of equity of this State (now Secs. 31, 33 and 34 of Art. 16)[3] It was thereafter held that these enactments did not preclude the legislature from granting divorces, *Wright v. Wright,* 2 Md. 429, 450, but by Sec. 33 of Art. 3 of the Maryland Constitution, the legislature is now prohibited from so doing.

So, at the present time and for many years past in Maryland, the jurisdiction to hear and determine questions of divorces and alimony, both temporary and permanent, is, and has been, vested in the courts of equity in this State. Alimony has never been defined here by statute; but, from the beginning, it has never been considered, as in some States, as a division in property. It 'is a maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct compels her to separate from him. It is not a portion of his real estate, to be assigned to her in fee simple * * * but a provision for her support, to continue during their joint lives, or so long as they live separate.' *Wallingsford v. Wallingsford,* 6 Harris & J. 485, 488. And, without exception, this Court has held that in a suit for alimony alone, the wife must allege and prove facts sufficient in themselves to support a decree for a divorce *a mensa* or *a vinculo.* In other words, in order that she be entitled to alimony, she

2. Now Md. Cts. & Jud. Proc. Code Ann., § 3-603.
3. *Id.*

18

must show she is entitled to either a partial or an absolute divorce. Among the many cases so holding, are: *Staub v. Staub,* 170 Md. 202, 208, 183 A. 605; *Hood v. Hood,* 138 Md. 355, 361, 113 A. 895; and *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526."

Other principles pertinent here have evolved over the course of time; for example, unless the decree of divorce awards alimony or reserves jurisdiction, the court is without power to enter a subsequent award of alimony. *Sody v. Sody,* 32 Md. App. 644, 363 A. 2d 568 (1976). If there are substantial changes in needs, financial conditions, and circumstances of the parties, the trial court retains continuing jurisdiction to amend its divorce decree awarding alimony to a wife. *Willoughby v. Willoughby,* 256 Md. 590, 261 A. 2d 452 (1970); *LaChance v. LaChance,* 28 Md. App. 571, 346 A. 2d 676 (1975); *Gosman v. Gosman,* 19 Md. App. 66, 309 A. 2d 34, modified on other grounds 271 Md. 514, 318 A. 2d 821 (1973). Misconduct of a wife, including adultery, after a divorce a mensa et thoro but prior to an a vinculo divorce, may cause her to lose her right to alimony. *Courson v. Courson, supra.*

It appears settled that under our existing case law the adultery of a wife, prior to an absolute divorce, constitutes a ground for revoking a prior award to her of permanent alimony. In the case before us, however, we are confronted with conduct subsequent to an absolute divorce, and thus the rule of *Courson* does not necessarily extend to the instant factual situation. Indeed, Judge Prescott in *Courson* stated specifically:

"It will be noted, we have not been required in this suit to pass upon the right of a wife, who has been granted an absolute divorce and alimony and who thereafter commits adultery,[4] to continue to receive support from the former husband, and express no opinion thereon at this time." 213 Md. at 188-9, 129 A. 2d at 920.

---

4. We are confident that the Court meant to say sexual misconduct, rather than "adultery".

The time has now arrived for this Court to express its opinion on this question.

Judge Morton said for this Court in *Atkinson v. Atkinson,* 13 Md. App. 65, 71, 281 A. 2d 407, 410 (1971):

"From a review of the cases throughout the country and the text authorities, it is apparent that the effect of a wife's 'misconduct' after an *a vinculo* divorce is not firmly settled." [5]

This view is reinforced by Nelson, *Divorce and Annulment,* Vol. 2A, Sec. 17, 19, page 92, where it is stated:

"Conduct of an ex-wife which would be unbecoming were she still bound by marital ties is not ground for modification of alimony or support provisions of a decree which has severed those ties. According to some courts, actual immorality on her part may be considered in connection with a motion to modify; but others take the position that, even though she is living in adultery, it is no concern of the ex-husband and not, of itself, ground for insisting upon modification of his obligations under the decree."

and in Schouler's *Divorce Manual* (1944), Sec. 283:

"Under some circumstances the husband may be relieved of the requirement that he pay alimony to his wife by reason of her subsequent misconduct. This rule, however, does not seem to have been generally applied. The Court is required to make an allowance of alimony to the wife that is reasonable and just. This is based upon happenings and conditions as they exist at the time of the divorce. There would not seem in the absence of statute to be any duty placed on the wife which her husband can enforce * * * "

5. While the parties in *Atkinson* argued the same issue raised here, the Court held that the issue was not presented by the facts in that case and did not decide the issue.

20

In 6 A.L.R.2d, page 860, the author states in part:

"There is a marked conflict of authority on the question whether the fact that a divorced wife is guilty of immoral conduct after the divorce is a ground for reducing or terminating alimony payments. Perhaps a majority of the courts state that such conduct is a ground for modification, although some of the decisions are mere dicta."

The following statement is found in 24 Am. Jur. 2d, *Divorce and Separation*, § 685:

"There is a definite disagreement among the courts on the question whether the subsequent misconduct of the wife constitutes a ground for either termination or reduction in the amount of alimony."

Browne, *Law of Divorce and Alimony*, page 296, states, however:

"Immoral conduct of the wife subsequent to a decree of divorce will not bar her right to previously awarded alimony. * * * An exception exists where she derives support from a paramour, and possibly where it can be shown that she continuously receives gain, apparently adequate for her maintenance from prostitution of her person. *In such cases presumably the payment of installments of alimony may be checked or reduced, not because of the woman's vicious life, but because further support from her husband is not at this time needed.* The same principle would apply where the wife had acquired property by legitimate means." [Emphasis added.]

The Superior Court, Appellate Division, of New Jersey has considered this question in *Garlinger v. Garlinger,* 137 N.J. Super. 56, 347 A. 2d 799 (1975). That case is cited by both appellant and appellee as lending support to their respective positions. The Superior Court in *Garlinger* reviewed the

existing authorities and noted the division of authority on the point presented here. The Court, however, found the majority rule to be better reasoned and adopted that position.

The holding of *Garlinger* was that the unchastity of the wife occurring after an absolute divorce is not *of itself* cause for terminating or reducing alimony. *Id.* at 63, 347 A. 2d at 803. The Court noted, however, that the former wife's unchastity could be, in a proper case, a factor to be considered "not as misconduct *per se,* but to the extent it may bear upon the amount of, and the necessity for, the allowance." *Id.* at 63, 347 A. 2d at 803. The Court suggested two cases in which the unchastity could properly be considered — if the wife is being, in whole or in part, supported by her paramour, or where the paramour is being supported by the wife's alimony.

In Maryland, it has been said that the purpose of alimony is to provide for the support and maintenance of the wife. It is never of a punitive nature.

It is also the law in Maryland that a divorce a vinculo ends all rights of either spouse dependent on marriage. *Crise v. Smith,* 150 Md. 322, 133 A. 110 (1926). One of those "rights" is or should be the expectation that the spouse remain chaste.

We believe that the *Garlinger* rule, identified in that opinion as the "majority" rule, is consistent with existing Maryland law. Accordingly, we hold that alimony, awarded to a wife in a decree of divorce a vinculo matrimonii, may not be terminated or reduced solely because of her unchaste conduct subsequent to the divorce. That post-divorce conduct may, however, be considered where it is relevant to a change in financial condition. *See Wolfe v. Wolfe,* 46 Ohio St. 2d 399, 350 N.E.2d 413 (1976).

As we have set out above, the chancellor's main concern in ordering the reduction of alimony appears to have been the unchastity of the appellant. Insofar as that concern was unrelated to a change in the appellant's financial condition, the chancellor erred. The chancellor did, however, mention the financial circumstances, though we are unable to determine whether he considered all the evidence before him relative to those circumstances. We shall remand this case, without affirmance or reversal, so that the chancellor may consider

the total financial situation of the parties (including both incomes and expenses), and determine the issue, taking the unchastity of the wife into account only insofar as it relates to the financial situation.

*Case remanded, without affirmance or reversal, for further proceedings consistent with this opinion.*
*Costs to abide the result.*