520 A.2d 1080

Brian C. TURRISI

v.

Katherine M. SANZARO.

No. 60, Sept. Term, 1986.

Court of Appeals of Maryland.

Feb. 4, 1987.

516

Stephen A. Friedman (Shelly E. Mintz and Joseph Greenwald & Laake, P.A., on the brief), Hyattsville, for appellant.

Donna C. Aldridge, Hyattsville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

The questions presented in this case are

1. Whether appellee, Katherine M. Sanzaro, at a hearing in the Circuit Court for Prince George's County, waived any claim to immediate alimony? and

2. Do the provisions of Title 11, subtitle 1, of the Family Law Article empower a circuit court to reserve its jurisdiction over alimony?

We answer both questions in the affirmative.

Although the parties are not in total agreement as to the facts, there is little dispute about those bearing on the issues before us. Katherine Sanzaro and appellant, Brian C. Turrisi, are both medical doctors. They were married in June 1980. In September of that year, it was determined that Dr. Sanzaro had multiple sclerosis. The parties separated, finally, in May 1983. They had no children, and resolved virtually all issues arising out of their marriage by agreement. The unresolved issue was that of alimony for Dr. Sanzaro.

In June 1984 Dr. Sanzaro sued Dr. Turrisi in the Circuit Court for Prince George's County for a voluntary separation divorce. She requested indefinite alimony. Dr. Turrisi denied the voluntariness of the separation and filed a "Counter Bill of Complaint" for divorce on the ground of desertion. Later, he filed a "Supplemental Counter Bill of Complaint" in which he also requested a voluntary separation divorce. Dr. Sanzaro admitted the allegations of this pleading, but continued to assert her entitlement to alimony, asserting

"she has a disease which prevents her from working on a full-time basis and may cause her to cease employment permanently at a future time.   If she cannot be gainfully employed, she requires financial assistance, alimony, from [Dr. Turrisi]."

On 22 March 1985 the circuit court granted Dr. Sanzaro an absolute divorce from Dr. Turrisi.   On 23 May it held a hearing on the alimony issue.   At that hearing, testimony was produced as to the needs, resources, earnings, and earning capacities of the respective spouses.   We need not review the details of that evidence.   It is enough to say that both were then employed in their professions.   Dr. Sanzaro, however, testified that her disease had required her to abandon the field of surgery.   She had also ceased doing hospital work;  she was handling an office family practice, working from two and one-half hours to four hours daily, for five days per week.   She had to use canes to walk, could not walk up and down stairs, could not control her bowels or bladder, and needed special assistance and arrangements in order to conduct her practice.

As to the future, Dr. Sanzaro conceded that as a physician she could not say, "within the realm of reasonable medical certainty, when if ever" she would become totally disabled.   Her treating physician, Dr. Anderson, also admitted that he could not state with precision just when total disability might occur.   In his deposition he had suggested a period of from five to 25 years;  in the circuit court he revised his estimate downward to from two to ten years based on more recent examinations of Dr. Sanzaro.   He explained the progressive nature of multiple sclerosis, and opined that Dr. Sanzaro was "in the chronic progressive category in that she is tending to get worse in a very progressive manner, without many instances of anything we could point to as improvement."   He noted that there is no known cure for multiple sclerosis.   At another point he said

"And I would say, from my experience watching the progression of her disease in the areas that are being

affected, affecting her legs, and to some extent her arms, especially her left arm, that she is going to be not only disabled, permanently and totally disabled in, by examination, but also in what she is able to do to try to support herself."

He went on to observe that "it is most probable that it [the onset of total disability] would be less than five years, that it is even probable that it would be less than two years."

Despite this gloomy prognosis, Dr. Sanzaro herself evidenced a courageous wish to be self-supporting and independent as long as she could. On her cross-examination by counsel for Dr. Turrisi, the following dialogue occurred:

"Q. Dr. Sanzaro, are you asking Judge McCullough to order your ex-husband to pay you alimony right now because you can't support yourself?

"A. Right now?

"Q. Yes.

"A. At the moment, no, I do not.

"Q. Okay. So—

"A. I am self-supporting.

"Q. At the present time you are self-supporting?

"A. As of today, yes.

"Q. Now, the—and you have been able to support yourself since the separation?

"A. Yes.

"Q. So the—what you want the Court to consider is if in the future you are unable to support yourself, to reserve alimony so that, if that eventuality occurs, at that time the Court can then order your ex-husband to pay you support?

"A. Future could be tomorrow, next week. Yes, I agree."

On the strength of this, the chancellor found that Dr. Sanzaro had declined an immediate award of alimony. On the authority of *Quigley v. Quigley*, 54 Md.App. 45, 456 A.2d 1305 (1983), he held he had no power to reserve the question of future alimony. Dr. Sanzaro appealed to the

Court of Special Appeals. In an unreported opinion, *Sanzaro v. Turrisi*, No. 892, Sept. Term, 1985 (April 9, 1986), the intermediate appellate court recognized that Dr. Sanzaro's "testimony discloses that she was not seeking alimony" at the time of the circuit court hearing. *Id.*, slip op. at 7. It nevertheless held that § 11–106 of the Family Law Article grants broad discretion to award indefinite alimony, and that Dr. Sanzaro's "self-claimed self-sufficiency" was but "one factor that would warrant against an award of indefinite alimony." *Id.*, slip op. at 11. It vacated and remanded for the chancellor to consider other factors and then to decide whether to award alimony. Because of that decision, it declined to address the reservation of alimony question, although it expressed an inclination "to adopt the dicta of *Quigley....*" *Id.*, slip op. at 12.

We granted Dr. Turrisi's petition for *certiorari* and for reasons we shall now explain, we reverse the judgment of the Court of Special Appeals.

### Immediate alimony

■ The chancellor observed that "Dr. Sanzaro testified that she was not seeking alimony" at the time of the hearing "and that she was well able to support herself." Contrary to the view of the Court of Special Appeals, this statement did not relate merely to one of the alimony factors listed in § 11–106(b). The chancellor explained that he did not need to make any findings under that subsection because Dr. Sanzaro "is not seeking alimony at this time." This explicit finding of fact is one we cannot set aside unless it is clearly erroneous. Md. Rule 886. That it is not clearly erroneous is apparent from the testimony we have quoted at p. 519, *supra*. The short of it is that Dr. Sanzaro expressly waived any award of immediate alimony. This she was entitled to do,[1] and her testimony demonstrates

---

1. Maryland has enforced separation agreements which included waivers of alimony. *See Goldberg v. Goldberg*, 290 Md. 204, 428 A.2d 469 (1981). No reported Maryland case has concerned a waiver of alimo-

that she did so knowingly and deliberately. And while it is true that her counsel continued to insist on immediate alimony, in a matter of this sort it is the client, not counsel, who decides what is or is not waived. *See Sharrow v. State Farm Mutual,* 306 Md. 754, 766, 511 A.2d 492, 498 (1986); *see also Prate v. Freedman,* 583 F.2d 42 (2d Cir.1978) (client retains ultimate authority over conduct of litigation). The chancellor did not err in refusing to award present alimony; the Court of Special Appeals erred in remanding for that purpose. Because of this holding, we must now consider the question the intermediate appellate court did not: the power of a circuit court to reserve alimony under the provisions of Title 11, subtitle 1 of the Family Law Article.

### *Reservation of alimony*

In Maryland the "long-standing rule ... has been that the right to claim alimony is extinguished at the time of the severance of the marital relationship." *Altman v. Altman,* 282 Md. 483, 490, 386 A.2d 766, 770 (1978). That is so because Maryland courts have viewed alimony as an incident of the marriage; as a consequence, the right to claim alimony ordinarily could not survive the dissolution of the marriage. *Id.* at 492, 386 A.2d at 771; *Brewster v. Brewster,* 204 Md. 501, 105 A.2d 232 (1954); *Staub v. Staub,* 170 Md. 202, 183 A. 605 (1936); *Marshall v. Marshall,* 162 Md. 116, 159 A. 260 (1932); *Meyer v. Meyer,* 41 Md.App. 13, 394 A.2d 1220 (1978), *cert. denied,* 284 Md. 746 (1979); *Flood v. Flood,* 16 Md.App. 280, 295 A.2d 784 (1972); *Abell v. Abell,* 12 Md.App. 99, 277 A.2d 629, *cert. denied,* 263 Md. 709

---

ny in open court. Among the cases acknowledging a spouse's power to waive alimony in open court are *Broadwater v. Broadwater,* 449 A.2d 286 (D.C.App.1982), *Cox v. Cox,* 44 N.C.App. 339, 260 S.E.2d 812 (1979), and *Gabritsch v. Gabritsch,* 164 W.Va. 146, 260 S.E.2d 841 (1979).

(1971); *Reed v. Reed,* 11 Md.App. 396, 274 A.2d 652 (1971).[2] As a consequence, the Maryland cases hold that when a Maryland court grants an absolute divorce, with no award of alimony, and "with no reservation of power in respect to the allowance of alimony thereafter, not only are the marriage ties completely severed, but the man is relieved of the obligation of a husband to support his wife." *Marshall,* 162 Md. at 122, 159 A. at 262.

It was, however, common practice for the equity courts to reserve jurisdiction over alimony, even though none was awarded at the time of divorce. 2 J. Bishop, *Marriage, Divorce, and Separation,* § 875 (1891); 2 W. Nelson, *Divorce and Annulment* § 14.21 (2d ed. 1961 Rev.). This practice was well recognized in Maryland. *See,* in addition to *Brewster, Staub, Marshall, Meyer, Flood, Abell,* and *Reed,* such cases as *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982); *Rhoad v. Rhoad,* 273 Md. 459, 330 A.2d 192 (1975); *Buehler v. Buehler,* 229 Md. 317, 182 A.2d 877 (1962); *Faulkner v. Faulkner,* 198 Md. 495, 84 A.2d 884 (1951); *McSherry v. McSherry,* 113 Md. 395, 77 A. 653 (1910); and *Sody v. Sody,* 32 Md.App. 644, 363 A.2d 568 (1976). The effect of a reservation of jurisdiction as to alimony was to enable the court to award alimony, in appropriate circumstances, long after the grant of an absolute divorce. *Johnson v. Johnson,* 202 Md. 547, 560, 98 A.2d 276, 279, *cert. denied,* 346 U.S. 874, 74 S.Ct. 126, 98 L.Ed. 382 (1953) (Hammond, J., concurring).

The question now before us is whether this established practice of reservation of alimony is still permissible under the provisions of Ch. 575, 1980 Md.Laws 2057 (the Alimony Act) now codified in Title 11, subtitle 1 of the Family Law

---

**2.** The rule of non-survivability of an alimony claim after an absolute divorce was judicially abrogated, with respect to certain migratory divorce circumstances, in *Altman. See also Wallace v. Wallace,* 290 Md. 265, 429 A.2d 232 (1981), and *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969). The legislature has now adopted a rule like that espoused in *Altman.* Family Law Art. § 11–105. But the non-survivability rule still applies where, as here, no foreign divorce is involved.

Article.[3]   As we have seen, the trial judge in this case thought it was not and the Court of Special Appeals, although not deciding the question, indicated a similar belief.   Both relied on the opinion of the intermediate appellate court in *Quigley v. Quigley*, 54 Md.App. 45, 456 A.2d 1305 (1983).   We now turn to that decision.

In that case the chancellor granted an absolute divorce, but refused to reserve on the question of alimony for Mrs. Quigley, because her income was greater than her husband's.   Mrs. Quigley appealed, asserting that the court should have reserved in order to permit her to seek alimony if at some future date she should elect to retire or become unable to work, thus reducing her income.   The Court of Special Appeals dismissed the appeal on jurisdictional grounds.   In the course of doing so, however, it indulged in extensive *dicta* questioning the power of a court to reserve alimony in light of the 1980 Alimony Act.

The Court of Special Appeals sought to ascertain legislative intention.   It reviewed the 1980 Report of the Governor's Commission on Domestic Relations Laws (hereinafter "1980 Report"), in which the Alimony Act had been proposed.   It noted that the Commission had recognized the then-existing ability to reserve alimony, but thought that the statute it had drafted (and which was in substance

---

**3.**   The Alimony Act as adopted by Ch. 575, 1980 Md.Laws 2057, first appeared as Code, Art. 16, §§ 1, 2, 3, and 5, replacing earlier sections with the same numbers.   Code, Art. 16 (1957, 1973 Repl.Vol., 1980 Cum.Supp.).   In the process of code revision, these provisions, generally without substantive change, but with some reorganization, were incorporated in Title 11, subtitle 1 of the Family Law Art. by Ch. 296, 1984 Md.Laws 1847.   When the 1980 Alimony Act was adopted, § 3–603(a) of the Courts and Judicial Proceedings Art. read:
   "A court of equity has jurisdiction in an action for divorce, alimony, or annulment of marriage.   The court shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the Ecclesiastical Courts of England."
   This provision, derived from former Art. 16, §§ 2 and 22 (1973 Repl.Vol.) was repealed by Ch. 296, 1984 Md.Laws 1847, which enacted what is now Family Law Art., § 1–201(a), providing that an equity court has jurisdiction over, among other things, alimony, annulment, and divorce.

adopted by Ch. 575, 1980 Md.Laws 2057) did not grant that right either explicitly or implicitly. 54 Md.App. at 52, 456 A.2d at 1309. It concluded:

"Obviously, a chancellor may reserve his or her ruling on an alimony award for a reasonable contemplative period following the granting of a divorce; he may not, however, award alimony indefinitely, absent a then finding of age, illness, infirmity, disability, no reasonable progress toward self-sufficiency or unconscionable disparity in respective living standards nor may he indefinitely *reserve* the right to do so either. Excepting only for contemplative necessity, the right to reserve alimony may not exceed the right to award alimony."

*Id.* at 56, 456 A.2d at 1311 [emphasis in original]. We think it read legislative intent too restrictively.

There is no doubt that the Alimony Act made major changes in the Maryland law of alimony. Prior to its effective date, the standards for awarding alimony had been judicial rather than statutory. *Willoughby v. Willoughby,* 256 Md. 590, 592, 261 A.2d 452, 453 (1970). Now, those standards are essentially statutory, *e.g.,* Family Law Art. § 11–106, although many of the standards incorporate previous judicial rulings. *See McAlear v. McAlear,* 298 Md. 320, 329–30, 469 A.2d 1256, 1261 (1984). Moreover, alimony may now be awarded to either spouse, § 11–101(b), and will usually be awarded for a definite time, if awarded at all, § 11–106.

One of the new concepts recommended by the Commission and embraced by the General Assembly was that of rehabilitative alimony. The Commission explained

"that the purpose of alimony is to provide an economic means for both parties to deal with their new unmarried life on their own. Put another way, the purpose of alimony is to provide an opportunity for the recipient party to become self-supporting."

1980 Report at 2. Thus, alimony was "not to provide a lifetime pension, but to facilitate a transition for the parties

from the joint married state to the separate single one, where this is practicable." *Id.* at 4. As a consequence, "in the ordinary case" alimony would be awarded for a definite time, to promote the transitional or rehabilitative function. *Id.*

Yet the Commission recognized that there might be circumstances in which it would be "necessary and proper to recognize an exception to this principle, on the grounds of age, illness, infirmity, or disability, where those factors are present and make it unlikely that the recipient party will ever be able to become economically self-sufficient." 1980 Report at 2. To address this problem, and also one of unconscionably disparate living standards, the legislation that the Commission proposed and that the legislature adopted provided, as now codified at § 11–106(c), Family Law Art.:

The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

There is no doubt that the alimony landscape is far different from what it was before the Alimony Act. But these changes do not persuade us that the Alimony Act abolished a court's power to reserve alimony.

The *Quigley* panel concluded that reservation is no longer permissible largely because of its perception of the rehabilitative nature of alimony and the elimination of the "lifetime pension" aspects of an award. That the legislature intended the implementation of these policies is clear. That does not mean, however, that reservation was done away with.

Since we are dealing with a statute, our basic task is to determine legislative intent. *Reid v. State*, 302 Md. 811,

490 A.2d 1289 (1985). Our first step in that analysis is to examine the language of the statute. *McAlear*, 298 Md. at 343 n. 26, 469 A.2d at 1268. The statute is silent as to reservation. That is not surprising, because the power to reserve was not statutory before 1980. Although recognized in one provision of statutory law (now repealed),[4] it was a judicially-created power. This, in turn, is not surprising, because in Maryland the power to award alimony was not a legislatively-conferred jurisdiction.

The history of alimony in Maryland was ably traced by Judge Eldridge for this Court in *Thomas v. Thomas*, 294 Md. 605, 609–15, 451 A.2d 1215, 1217–20 (1982), building on Judge Wilner's equally scholarly treatment of the topic in the Court of Special Appeals. *Thomas v. Thomas*, 48 Md.App. 255, 261–67, 426 A.2d 976, 979–83 (1981).[5] There is no need to repeat here those perceptive analyses. It suffices to say that from provincial times jurisdiction to award alimony has been viewed as within the inherent authority of Maryland equity courts. *See Thomas*, 294 Md. at 613, 451 A.2d at 1219. The first statutory provision as to alimony—Ch. 22, Acts of 1777—"merely confirmed the previously existing inherent authority of equity courts over the matter of alimony." *Thomas*, 294 at 614, 451 A.2d at 1219–20, and cases there cited. The present provisions of Family Law Art. § 1–201(a)(2) do no more than that.

The circuit courts have, therefore, inherent power to award alimony, and inherent power to reserve as to alimony. The Commission recognized the existence of the latter power. In summarizing Maryland alimony law prior to the

---

**4.** Former Art. 16, § 5(b) provided: "If a decree of the court is silent as to alimony or reserves alimony, the court that issued the decree has sole discretion as to whether or not alimony pendente lite on appeal shall be granted." This subsection was enacted by Ch. 373, 1969 Md.Laws 835, amended by Ch. 440, 1976 Md.Laws 1161, and repealed in 1980 by the Alimony Act.

**5.** For earlier discussions of this subject, *see Courson v. Courson*, 213 Md. 183, 129 A.2d 917 (1957) and *Meyer*. For a more recent review, *see Young*.

1980 Act, it observed, "when a Court enters a decree of divorce, it may also award alimony or reserve the right to do so; if the Court fails to take either of those actions at that time, it cannot thereafter make an award of alimony, unless the parties themselves have agreed that it may...." 1980 Report at 1. The Report makes no further mention of reservation, nor, as we have seen, does the legislation it generated.

To ask us to assume that by mere silence the legislature intended to abolish a long-standing inherent power of Maryland equity courts, specifically called to its attention by the Commission, is to ask too much. Repeal of such a power by silence is not favored, *see Hoffman v. Key Federal Sav. and Loan Ass'n*, 286 Md. 28, 43, 416 A.2d 1265, 1269 (1979), and we shall not indulge any such assumption here. Nor do we believe that the legislative intent demonstrated by the purposes of the Alimony Act, *see McAlear*, 298 Md. at 343 n. 23, 469 A.2d at 1268, requires us to hold that the power to reserve alimony has been abrogated. The concepts of rehabilitative alimony for a definite time, the desirability of each spouse becoming self-supporting, the undesirability of alimony as a lifetime pension, and the use of indefinite alimony only in exceptional circumstances do not mandate the elimination of the power to reserve.

For example, facts before a court may demonstrate no present basis for either rehabilitative or indefinite alimony. But those same facts may show that a highly probable basis for awarding one or the other will exist in the immediate future. Under such circumstances, we see no reason why reservation would be inconsistent with the purposes of the Act. Indeed, under such circumstances, reservation would be consistent with the Act's overall purpose, as we defined it in *McAlear*, 298 Md. at 348, 469 A.2d at 1271: "The purpose of the 1980 Alimony Act is to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage."

■ We hold, therefore, that the Alimony Act has not abolished the inherent power of an equity court to reserve jurisdiction as to alimony when it awards a divorce. The *Quigley dicta,* to the extent they are inconsistent with this holding, are disapproved.

### Exercise of the power to reserve

■ To hold that the power to reserve still exists is not to say that it may be appropriately exercised in every case. The power is a discretionary one, *Abell,* 12 Md.App. at 106–07, 277 A.2d at 634, and whether a chancellor should exercise his discretion in favor of reservation is a matter affected by various considerations, non-statutory as well as statutory.

■ Thus, in Maryland, the power to award permanent alimony ordinarily existed only if the claimant could show grounds for either a limited or absolute divorce. *Brodak,* 294 Md. at 28, 447 A.2d at 856; *Wallace,* 290 Md. at 224, 429 A.2d at 237. The Alimony Act has not changed this rule so far as definite or indefinite alimony is concerned. If, therefore, a party does not make this showing, he or she is not entitled to alimony, and it would be an abuse of discretion to reserve. *See Rhoad,* 273 Md. at 465, 330 A.2d at 195–96 (reservation improper when claimant's conduct disentitled her to alimony).[6] Furthermore, in view of the Act's emphasis on promotion of economic self-sufficiency, its favorable approach to alimony for a definite period, and its opposition to the notion of alimony as a lifetime pension, it would not be appropriate to reserve simply because there

---

**6.** We recognize, of course, that the "fault" basis for denial of alimony relied on in *Rhoad* no longer applies the way it did in that case. The "circumstances that contributed to the estrangement of the parties" is but one of the factors to be considered in an alimony determination, Family Law Art. § 11–106(b)(6), and this approach was to some degree recognized even prior to the Alimony Act. *See, e.g., Wallace.* We cite *Rhoad* merely to illustrate the principal that some ground for divorce must be shown before either indefinite or definite alimony may be awarded.

may be some vague future expectation of circumstances that might show a basis for alimony. *See Kingsley v. Kingsley*, 45 Md.App. 199, 412 A.2d 1263, *cert. denied*, 288 Md. 737 (1980); *Benner v. Benner*, 37 Md.App. 367, 377 A.2d 582 (1977) (alimony not modifiable on basis of uncertain future expectations). By the same token, the possibility that a claimant might become aged, infirm, or disabled, or that standards of living could conceivably be unconscionably disparate at some unknown future date, thus potentially invoking § 11–106(c), would not provide a basis for reservation. Reservation like that approved in *Buehler*, 229 Md. at 319, 182 A.2d at 878, where a wife obtained reservation merely on an allegation that her future ability to support herself was " 'of necessity uncertain,' " is no longer proper.

Moreover, the Act itself suggests limitations on the chancellor's power to reserve. Section 11–106(b)(11)(ii) of the Family Law Art. includes as one of the factors to be considered in an award of alimony "any award made under §§ 8–205 and 8–208 of this article." Section 8–205 deals with monetary awards, and directs the court, in considering such an award, to weigh, among other factors "any award of alimony...." Section 8–208 deals with use and possession of the family home and family use personal property. The close relationship between alimony and monetary awards has often been recognized. *See, e.g., Campolattaro v. Campolattaro*, 66 Md.App. 68, 502 A.2d 1068 (1986), *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985) and *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984). If a case involves both a monetary award and alimony, reservation of alimony might be impracticable; at the very least, this situation would demand the most careful exercise of discretion. Similar problems may arise under § 11–110 (payment of reasonable and necessary expenses) where one consideration is "the financial resources and financial needs of both parties." Section 11–110(c)(1). This may also implicate alimony.

■ On the other hand, there may be cases which do not involve monetary awards, family homes, or reasonable and necessary expenses, and in which grounds for divorce unquestionably exist. The case before us is one. If, in a case of this sort, the record contains evidence from which the chancellor could find that the claimant, in the reasonably foreseeable future, will be in circumstances that would justify an award of rehabilitative or indefinite alimony, it would not be an abuse of discretion to reserve.

### The present case

■ We have held that the chancellor did not err in finding that Dr. Sanzaro waived present alimony. For that reason, we reverse the judgment of the Court of Special Appeals. We have also held that the power to reserve alimony still exists. For that reason, the chancellor's reliance on the *Quigley dicta* to the contrary was error. We shall remand to the Court of Special Appeals with direction to remand to the Circuit Court for Prince George's County for further proceedings consistent with this opinion.

On remand, the chancellor must review the record, and on the basis of the evidence contained in it, decide whether to exercise his authority to reserve alimony. If he does decide to reserve, this does not mean that Dr. Sanzaro is entitled to alimony of any sort. It means only that when, pursuant to the reservation, application for alimony is made, the chancellor must then weigh the § 11–106 factors and on the basis of that weighing, determine what amount, if any, to allow, and whether to allow it for a definite period or indefinitely. If he does at some point award alimony, it will be subject to future revision under § 11–107.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED BETWEEN THE PARTIES.

McAULIFFE, Judge, concurring.

I agree that the Legislature has not divested the courts of the power to reserve alimony in an appropriate case. I also agree that because of significant changes in the law concerning alimony, and because of the policy underlying those changes, the instances where reservation of alimony will be appropriate will be very rare.

The concept of routinely approving permanent and indefinite alimony to the wife, created at a time when the legal existence of the wife merged into that of the husband at marriage and he became the owner of her personal property and entitled to her services, has properly given way to a concept of "rehabilitative" alimony allowable to either spouse. Recognizing the "partnership" aspects of a modern marriage, and the ability of the courts to make an equitable adjustment of property, the clearly expressed preference—where there is a need for alimony at all—is for the grant of alimony for a specific and limited period of time. The duration and amount of alimony is intended to be that which will reasonably permit the spouse in need to become economically self-sufficient. What constitutes economic self-sufficiency may run the gamut from the ability to afford the basic necessities of life up to the standard of living enjoyed by the parties during the marriage, and is determined by the trial judge after consideration of a number of factors set forth at § 11–106 of the Family Law Article, Maryland Code (1984). In exceptional cases, where an award of alimony for a limited period of time cannot achieve the goal of self-sufficiency, indefinite alimony may be awarded.

I do not agree that alimony may be reserved in the absence of a concomitant determination that there exists an identifiable set of circumstances that is likely to generate a need for rehabilitative alimony in the reasonably near future. In this case, for example, if the trial judge should determine after consideration of all relevant factors, including the fact that the brief marriage of Dr. Sanzaro had no

adverse impact on her ability to remain self-sufficient, that there should be no award of alimony even if the disease terminates her wage earning capacity in the near future, then the trial judge should not reserve the question of alimony. In those rare instances where a reservation of alimony is appropriate, the trial judge should articulate for the record the imminent circumstances that justify the reservation.

I agree that this is a question properly considered by the trial judge in the first instance, and therefore I concur in the decision to remand.