# CATHERINE F. QUIGLEY *v.* STEPHEN T. QUIGLEY

[No. 903, September Term, 1982.]

*Decided March 3, 1983.*

46

The cause was argued before Lowe and Garrity, JJ., and Charles E. Orth, Jr., Associate Judge of the Court of Appeals (retired), specially assigned.

*John R. Foley* for appellant.

*Hal Witt,* with whom was *Pamela J. Murphy* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

The union of Stephen Quigley and Catherine Foley joined by a priest on August 19, 1944, was put asunder by a Montgomery County Circuit Court chancellor 38 years later. In truth, however, the marriage was asunder for its last 13 years.

In 1968, Stephen T. Quigley (appellee) left his wife, Catherine F. Quigley (appellant), and their six children, all of whom are now mature. Because of his desertion — and admitted adultery — he was at that time unable to obtain a divorce but was not deterred ten years later from taking up residence with a female companion.

For a time both spouses worked and both appear to have maintained their fiscal responsibilities. Mr. Quigley, a Ph. D., was retired at age 59 as a Naval Reserve Rear Admiral, and until recently had been employed by the American Chemical Society. He was, at the time of trial, however, between retirement eligibility and earned income, surviving on $96 per month and loans; but he expected to receive within a year $1,000 a month naval retirement and at age 65 an additional $700 from the American Chemical Society.

Mrs. Quigley, on the other hand, was by her expressed desires still working at age 61, and intends to continue as long as she is able. Her retirement eligibility from the National Library of Medicine was, as of April, 1982, $383 per month, notwithstanding an annual salary of $21,800. Her net worth, including her half of their jointly owned home which she occupied, was $105,957, while Mr. Quigley's was $85,200.

On October 15, 1980, Mr. Quigley filed suit for divorce on the ground of 3 years uninterrupted separation [1] and prayed, among other things,

"[t]hat the court make a proper distribution of the real and personal property and assets of the parties, and grant a monetary award to plaintiff as an adjustment of the equities and rights of the parties concerning marital property."

Mrs. Quigley's answer admitted that ground but, by way of cross-bill, she also sought a divorce on the grounds of adultery and desertion and further prayed a distribution of marital property (including a monetary award), alimony, attorney's fees, court costs, etc. Mr. Quigley admitted the adultery, but denied that the desertion was without cause.

The chancellor granted a divorce a vinculo matrimonii to appellee, denied appellant's cross-bill and her "prayers for alimony or, in the alternative, for reservation of alimony and attorney's fees"; however, he appears to have reserved the distribution of marital property issues raised by the parties:

"[T]hat the issue of division of the personal property of the parties which is located at the former marital residence of the parties is reserved for determination following a further hearing or other proceedings in the event that such issue cannot be resolved by the parties themselves . . . ."

Appellant initially contends that there was error in failing to grant *her* the divorce on the "more heinous acts" of adultery admitted by appellee or desertion which she proved. See

1. Art. 16, § 24 reads in pertinent part:

"Upon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii for the following causes, to wit: . . . seventhly, on the application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years. A plea of res adjudicata or of recrimination with respect to any other provisions of this section shall not be a bar to either party obtaining a divorce on this seventh ground."

*Flanagan v. Flanagan,* 270 Md. 335, 341 (1973). She does not argue that a divorce was not legally merited, but that she was entitled to obtain it as a matter of preference. Apparently, she would have us establish a priority, or pecking order of conflicting grounds proportionate to a badder-is-better standard, among those seven grounds permitted by Art. 16, § 24. We find the reasoning absurd and based primarily upon the animosity that has festered over the years demanding now that the court point the finger of fault; more in vindictiveness than as vindication, considering that appellee never denied having initiated the dissolution and has admitted the adultery.

This contention was answered by this Court in *Flanagan v. Flanagan,* 14 Md. App. 648, 654-655 (1972), *cert. granted on other grounds,* 270 Md. 335 (1973), where now Chief Judge Gilbert pointed out that the seventh ground of divorce under Art. 16, § 24 was enacted by the Legislature to preclude a party from perpetually preventing his or her spouse from obtaining a decree of divorce a vinculo matrimonii. Responding to an argument identical to appellant's Judge Gilbert wrote:

> "The appellant's cross-bill alleging desertion, an allegation which the record discloses she failed to sustain, or the revelation in the testimony of the appellee's adultery, are both grounds for divorce if proven, but are not in law sufficient to defeat the non-culpatory five year uninterrupted separation. Assuming that the husband had proven his cause of action, and further assuming that the wife had proven desertion or adultery, it would be incongruous to ban recrimination as a defense under the five year statute, and at the same time allow the wife to prevail. Such action would defeat the legislative purpose. The language of the seventh ground that 'res adjudicata' and recrimination 'shall not be a bar to either party obtaining a divorce on this * * * ground' precludes that possibility." *Id.* at 655.

A recent holding by this Court is based on similar logic. See *McClellan v. McClellan,* 52 Md. App. 525, 451 A.2d 334 (1982).

The more practical (if legally unnecessary) reason asserted below for arguing that the divorce be granted on the culpable grounds asserted in the cross-petition, was to provide a basis for determining alimony eligibility for Mrs. Quigley, notwithstanding that she acknowledges appellee's present income is substantially less than hers.[2] It is that material concern which constituted appellant's second issue which asserts that the chancellor refused to "reserve" alimony as a means of insuring her an adequate retirement, if and when she does retire.

Initially, we should point out that Maryland's alimony laws were substantially changed by statute in 1980. That year, Chapter 575 of the Acts of the General Assembly codified the work product of The Governor's Commission on Domestic Relations Laws on the subject of alimony in what is now Md. Ann. Code, Art. 16, § 1, *et seq.* It is, therefore, now a question of legislative intent which confronts appellant rather than the pre-1980 Act case law upon which she relies.

We further note that appellant's concern that the court should have declared appellee at fault for the dissolution of the marriage to permit her to overcome the common law prerequisite to alimony, is now meaningless. After pointing out that the pre-1980 law in Maryland was that the right to alimony was forfeited by an errant spouse, guilty of a culpable ground of divorce, the Commission provided in the new statute a compromising means of overcoming so harsh a forfeiture. The statute recommended by the Commission, and adopted by the Legislature, expressly declares that "the existence of a ground for divorce against the party

---

**2.** The obvious answer, of course, was supplied by the Court of Appeals when it granted certiorari to review our *Flanagan, supra,* and decided that a "decision as to the proper award of alimony, while dependent upon the existence of grounds for divorce . . . , is separate and apart from that portion of the decree which grants the divorce." Flanagan, *supra,* 270 Md. at 338.

requesting alimony shall not be an automatic bar thereto." Art. 16, § 1 (a). It then placed the "facts and circumstances leading to the estrangement of the parties and the dissolution of the marriage" as one of numerous expressed factors to be considered in determining the amount of an award of alimony. Art. 16, § 1 (b) (7). The reasoning was explained by the Commission in its report on the proposed bill.

> "The Commission does not believe that vice or fault should be rewarded. However, it also does not believe that the Judges of Maryland should be deprived of the opportunity and responsibility to apply their sound discretion to all parties who appear before them, and to weigh the 'fault' as against the need and any countervailing equities of a party in need of support. The Commission believes that the present situation, where the vice of the payor is winked at and only the conduct of the needy spouse is the criterion, is inequitable. Our proposal, accordingly, empowers the Court to take into account the whole situation of the parties, and on that basis to act as is most fair."

In addition to that statutory alleviation of appellant's concern, the chancellor in this case made it perfectly clear that no assessment of fault precluded appellant alimony or its reservation. He found as a fact that Mrs. Quigley simply was not presently or foreseeably in need of it.

> "Well, I must make a finding of fact that there has been no demonstration of the wife's financial need, nor has there been a demonstration that that need may reasonably be anticipated in the future such as because of ill health, a tendency of losing the job, or other financial circumstances. Consequently, the Court finds, taking into consideration all the circumstances which determine, first, her eligibility, that the controlling factor is the wife's need. That not having been established that the Court, therefore, cannot grant the reservation of alimony."

Appellant argues that if and when Mrs. Quigley retires, her retirement income would be insufficient, while Mr. Quigley's would be ample. Her accrued retirement benefits equaled only $383 per month, while Mr. Quigley anticipated $1,000 per month as a navy retirement benefit in the near future and, at age 65, an additional $700 per month from the American Chemical Society pension. The chancellor, says appellant, erred in not "reserving" alimony so that if Mrs. Quigley elects to retire thereafter (which she expressly did not anticipate), or becomes infirm or unable to work, she could return to court asking to participate in Mr. Quigley's pensions. Such reservation would make appellee's anticipated pensions her own annuity or health insurance on call or in need.

Whether a chancellor can "reserve" alimony generally under the new statute is itself of questionable authority. The Commission recognized that under pre-1980 law, a court could reserve the right to award alimony; however, the carefully structured statute redefining the court's right to grant alimony does not expressly or implicitly grant that right.[3] Implicitly, in fact, it denies a general reservation requiring a determinative period after which alimony would forever end unless during that period, the court, upon application, extended the period to avoid a harsh and inequitable result. Art. 16, § 1 (c) (1).

In clear language the Legislature seemingly intended to preempt the so-called "common law alimony" which we have held no longer exists, *Hofmann v. Hofmann,* 50 Md. App. 240, 244 (1981), by enacting a new statutory authority defining the limitations on the court's authority to grant alimony. Newly enacted Art. 16, § 1 (a) provides when alimony may be awarded (upon granting a limited or absolute divorce); provides that it may be awarded to either party; and removes the case law prohibition that a petitioner's culpability shall automatically bar an award.

---

3. Although the standards for awarding alimony are judicial, the *authority* to do so was (and is) statutory. Willoughby v. Willoughby, 256 Md. 590, 592 (1970).

Subsection (b) (1) [4] sets forth a series of factors to be considered among others, by the chancellor, in establishing the amount of the award and the period of its continuation. Among these are the facts and circumstances leading to the estrangement of the parties and the dissolution of the marriage. That consideration as we have noted, has been removed as a requisite (or bar) to entitlement and relegated to one of a number of considerations.

Subsection (c) mandates that the court "[s]hall determine the period during which alimony shall be paid, at the conclusion of which no additional alimony shall accrue." That period may only be extended upon application filed "during the period" and then only to avoid a "harsh and inequitable result." Only in two instances may the court establish an "indefinite period" of alimony payment. They are when the court finds as a fact that:

---

**4.** "(b) *Factors.* — Subject to the provisions of paragraph (c) of this section, the award shall be in such amount or amounts and for such period or periods of time as the court may deem just, after it considers all relevant factors, including:

(1) The financial needs and resources of both parties, including

(i) All income and assets, including nonincome-producing property;

(ii) Any award made under §§ 3-6A-05 and 3-6A-06 of the Courts and Judicial Proceedings Article;

(iii) The nature and amount of the financial obligations of each party; and

(iv) The respective rights of the parties to receive retirement benefits.

(2) The ability of the party seeking alimony to be wholly or partially self-supporting;

(3) The time deemed necessary by the court for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(4) The standard of living of the parties established during the marriage;

(5) The duration of the marriage;

(6) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(7) The facts and circumstances leading to the estrangement of the parties and the dissolution of the marriage;

(8) The age and the physical and mental condition of each party;

(9) Any agreement between the parties;

(10) The ability of the party from whom alimony is sought to meet his or her needs while meeting those of the party seeking alimony; and

(11) Such other facts as the court deems it necessary or appropriate to consider in order to arrive at a fair and equitable award of alimony."

"(i) The party seeking alimony, by reason of age, illness, infirmity, or disability, cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(ii) Even after the receiving party will have made as much progress toward self-support as can reasonably be expected, the respective standards of living of the two parties will be unconscionably disparate." Art. 16, § 1 (c) (1).

These clearly defined limitations make it implicitly clear that the Legislature did not intend alimony to be either a lifetime annuity or an insurance policy against future setbacks or disasters that are not foreseeably imminent. The Governor's Commission's report makes that abundantly clear by pointing out that

" . . . the purpose of an award of alimony at the time of divorce is not to provide a lifetime pension, but to facilitate a transition for the parties from the joint married state to the separate single one, where this is practicable."

In the case at bar that "transition" was made over a thirteen year period before the divorce was actually obtained. The record reflects a present income of the petitioner in excess of that of the contemplated payor spouse. Mrs. Quigley is, has been, and expressly intends to continue being, self-supporting. Any disparity of living standards seems to weigh more in her favor than against her. Even assuming that alimony could under the statute be "reserved" indefinitely as she asked — which is highly questionable — what she asks is simply lifetime insurance against the unexpected. That is not now (nor was it ever) a proper determinative consideration.

Throughout its report the Governor's Commission made it clear that the purpose of alimony was to provide an opportunity for the recipient party "to become" self-supporting. It is "a vehicle for 'rehabilitation' or training and not a lifetime pension." And although the Commission decided to leave

"The Problem of Old Age" for the courts to determine on a

> "case-by-case basis, with the provision that the parties' respective rights to receive retirement benefits are a factor that the Court should consider in *fixing* the amount and period of alimony." (Emphasis added)

the language of that explanation, as well as the language of the statute, clearly does not contemplate, or permit an indefinite hiatus in *awarding* alimony by reserving indefinitely its right to do so. The statute does permit an indefinite award or extension to an aging or infirm spouse in need whose transition cannot reasonably be expected to progress; or one who having exhausted his or her capacity still remains desperately out of proportion with the standard of living to which he or she had been accustomed. Nothing, however, was included (despite its having been considered) that would ever permit a chancellor to use an errant spouse as a guarantor for the pecuniary well-being of a self-sufficient — albeit virtuous — one.

Had the divorce in this case been obtained at or near the time of the desertion, adultery or estrangement, Mrs. Quigley may well have been entitled to some award for some transition period during which she may have applied for an extension if she could have shown the necessity to avoid a harsh and inequitable result. But once her income established her as self-sufficient, alimony and any further right thereto would have ended, absent a petition within the original period indicating foreseeable disability in achieving substantial parity of living standards. Had the Legislature intended alimony to be used as an insurance policy against hard times, not only would such purpose be in direct conflict with the new requirement of defining a period after which the right would terminate, it clearly would have to apply to *both* parties.

The statute clearly provides that the court may award it "to either party" and under it appellee was not barred simply because of the existence of the culpable divorce grounds

against him. Ironically, under the facts of this case, appellee appears to have had a need at the time more imminent, if not a greater entitlement, to alimony had he sought it. Even if the Legislature intended to permit the discretionary reservation of alimony as hard-times-insurance without some reasonably anticipated need in the foreseeable future, it would seemingly be an abuse of discretion to withhold such reservation from *either* party, so that each may be the insurer of the other's future forever. Certainly if the Legislature intended to impose so rigid a restriction on matrimony it would have so stated. One can imagine the effect of that possibility — even as a judicially discretionary right — on the institution of marriage. The permanency of those presently bound would be enhanced, but the future revenue from the sale of marriage licenses would hardly pay printing costs.

Obviously, a chancellor may reserve his or her ruling on an alimony award for a reasonable contemplative period following the granting of a divorce; he may not, however, award alimony indefinitely, absent a then finding of age, illness, infirmity, disability, no reasonable progress toward self-sufficiency or unconscionable disparity in respective living standards nor may he indefinitely *reserve* the right to do so either. Excepting only for contemplative necessity, the right to reserve alimony may not exceed the right to award alimony. As pointed out by Judge Marvin Smith, writing under the old alimony law in *Rhoad v. Rhoad*, 273 Md. 459, 465 (1975),

> "[i]t follows that if an award under such circumstances would be an abuse of discretion, then the reservation of the question of whether alimony should be granted would be an equal abuse of discretion."

The matrimonial bond that has restricted the circulation of these two essentially single persons for 13 years has finally been loosed. The chancellor found no legal right nor moral reason to retain any thread to impede them in their

legal transition to single life as they walk away from an already prolonged and unhappy marital episode. There is no error apparent in his findings of fact nor does there appear to be an abuse in the exercise of his discretion, to the extent that there was discretion to exercise under the new statute.

But because we must dismiss this case for lack of jurisdiction, that which we have said is not conclusive as to the points discussed. *Eastgate Associates v. Apper,* 276 Md. 698, 704 (1976). As pointed out above the decree reserved the distribution of marital property for subsequent determination "in the event that such issue cannot be resolved by the parties themselves." In defining a "final judgment" from which appeals are statutorily restricted, Md. Cts. & Jud. Proc. Code Ann., § 12-301, the Court of Appeals has pointedly defined that term by Md. Rule 605 a. That rule requires "an express determination" by the chancellor "that there is no just reason for delay" in order for a judgment to be appealable when less than all of the claims for relief presented in an action have been decided. *Estep v. Estep,* 285 Md. 416, 422-423 (1979).

In *Denningham v. Denningham,* 49 Md. App. 328, 333-334 (1981), we pointed out that absent such determination even in domestic cases, we had rigidly adhered to *Eastgate, supra, i.e.,* until some question was raised in *Pappas v. Pappas,* 287 Md. 455, 463 (1980), creating a possible exception to the rule. See *Denningham, supra* at 333.

Even if there is such an exception applicable in some portions of domestic cases, however, we do not see how it could apply here. In her prayers for relief appellant asked the court for a distribution of marital property, to exercise its powers under § 3-6A-05 (monetary award) "including reserve powers." Presumably such reference was to the power of the court to reserve for ninety days (but see *Brodak v. Brodak,* 294 Md. 10 (1982)) the determination of marital property after it granted an absolute divorce. § 3-6A-05 (a).

Part of the marital property to be considered in the contemplated distribution would likely be the appellee's vested retirement benefits from the American Chemical Society as

well as those of appellant vested in her during the marriage. *Deering v. Deering,* 292 Md. 115 (1981). Appellant expressly requested consideration of appellee's naval retirement (but see *Hill v. Hill,* 291 Md. 615 (1981)), in addition to jointly owned real and personal property, accounting for income therefrom, etc.

In setting forth clear guidelines for chancellors in determining the application of pension benefits under § 3-6A-05, *Deering,* 292 Md. at 131, emphasized that the provision does not authorize a property award without the chancellor first giving due consideration to any alimony decreed. § 3-6A-05 (b) (8). That consideration obviously contemplates alimony reserved or alimony denied.

Presumably the parties decided that in order for that factor to be considered in the distribution, its reservation or refusal should be finalized on appeal lest the entire distribution of personal property be out of syncopation because of an unstable ingredient. While that may explain why the parties unquestioningly appealed the judgment that left an issue undecided, it does not explain why the appellant failed to obtain a Rule 605 a determination by the court; nor does it explain why the court in its decree failed to direct the entry of final judgment upon such an express determination that there was no need for delay.

Furthermore, by leaving the marital property distribution either to the resolution of the parties themselves, or for the court's determination following further proceedings, the finality of the decree as a final judgment — and hence our very jurisdiction upon appeal — is left in the hands of the parties subject to a property settlement. Jurisdiction, as we have repeatedly been told, may not be bestowed by agreement of the parties. *Mayor v. Shearwater Sailing,* 265 Md. 280, 284 (1972).

Because the determination of the monetary award prayed upon distribution of the marital property under § 3-6A-05 comprehends to some degree the issues raised on this appeal, we have considered the circumstances sufficiently exceptional to express our views on the merits of the case.

*Eastgate, supra* at 704. We reiterate, however, that they are dicta.

*Appeal dismissed.*
*Costs to be paid by appellant.*