747 A.2d 221

Joseph CACCAMISE

v.

Susan CACCAMISE.

No. 5943, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 3, 2000.

506

508

Barbara J. Gorinson (Joseph, Greenwald & Laake, P.A., on the brief), Greenbelt, for appellant.

T. Joseph Touhey, Glen Burnie, for appellee.

Argued before MURPHY, C.J., and HOLLANDER and RICHARD T. ROMBRO (Retired, Specially Assigned), JJ.

RICHARD T. ROMBRO, Judge.

The Circuit Court for Anne Arundel County (Hon. James C. Cawood, Jr. presiding) granted an absolute divorce to appellant, Joseph Caccamise, from Susan Caccamise, appellee, on the ground of desertion. Both parties appealed and present numerous questions for our review. Appellant asks:

I. Did the trial court err in awarding alimony to appellee when she had no grounds for divorce?

II. Did the trial court err in failing to find an irrevocable trust to be marital property subject to equitable distribution?

III. Did the trial court err in failing to award to appellant retroactive child support, where there was no finding that such an award would produce an inequitable result?

IV. Did the trial court err in granting use and possession of a vehicle owned by appellant's business to appellee?

V. Did the trial court err in awarding attorney's fees to appellee?

Appellee's cross-appeal presents the following questions:

I. Did the circuit court err in failing to determine that the parties' separation was mutual and voluntary?

II. Did the circuit court err in determining the amount and time period for the monetary award by not ordering that the award be paid with interest and by not providing a contingency for early payment?

III. Did the circuit court err in only awarding $100 per month in alimony to appellee?

IV. Did the circuit court err in its determination and calculation regarding the contribution it ordered from appellee to appellant on the condominium and home?

### Factual Background

The parties were married on January 10, 1981, and had one child, Maria, born February 29, 1984. At the time of the trial, the husband was 52 and the wife was 51. When the parties were married, appellant owned a business with two other partners called Technigraphics, Inc. Testimony disclosed the business had gross revenues in excess of eight million dollars. Appellant's salary at the time of trial was approximately $90,000 per year. In 1984, appellant had started another business, SKW Leasing, which bought, sold, and leased equip-

ment to Technigraphics, Inc. Appellee was employed at the Pentagon by the Department of Defense, making approximately $69,000 from the time of the marriage until 1988. Up until the parties separated, appellee held various small jobs, none equaling her salary from the Department of Defense.[1]

The parties built a new home together, partly with the proceeds from appellee's sale of her prior home, a loan from appellee's friend, and some proceeds from the sale of appellant's prior business. The house was titled in appellee's name until 1988, when the home was refinanced and appellant's name was added to the deed. Appellee has not contributed to the mortgage or other payments since she left the marital home in October 1996.

Appellant purchased a condominium in Tampa, Florida, during the marriage, for his daughters from a previous marriage to reside in while they attended college. It was sold in 1997, for $12,402. The proceeds of the sale were retained by appellant.

The marriage began to deteriorate in 1994. The parties argued about appellee re-acquiring her job at the Department of Defense, and appellant's conduct of his business. As a result, they began to spend more time apart. Appellee attended counseling and appellant later joined the sessions. The counseling sessions ended in 1994–5. Sexual relations ceased, and appellee finally left the marital home in October 1996.[2] The appellee has had the use and possession of a Jeep owned by appellant's business with appellant's permission since the separation.

---

**1.** Appellant contends that he asked appellee to seek employment when his business began failing and that she declined. Appellee ran a quilt shop and took care of their daughter. She suggested that appellant's business sell some of its inventory and equipment to help with its decline. These details are irrelevant to this appeal.

**2.** Appellee states in her brief simply that she left the marital home, and that appellant did not attempt reconciliation. Appellant's brief relates that appellee asked appellant to leave, he declined, then she left.

At the time of trial, both parties were employed. Appellant was making approximately $90,000 a year and appellee earned around $39,000 with the State of Maryland legislature. Appellee was also the beneficiary of an irrevocable life insurance trust in the amount of $600,000 established by appellant. The trust gives the trustee full discretion except he must distribute up to $5,000 annually to appellee upon her request.

## Procedural History

Appellant filed a complaint for a limited divorce in the Circuit Court for Anne Arundel County in January 1997, asserting as the cause of action desertion or, in the alternative, voluntary separation. Appellant sought joint legal custody of their daughter, child support, a marital property determination, use and possession of the family home, and attorney's fees.

Appellee's answer conceded that she left the marital home [3] but asserted that appellant had constructively deserted her. Appellee requested custody, child support, use and possession, and attorney's fees.

In December 1997, appellant filed a Supplemental Complaint for Absolute Divorce.[4] The complaint alleged the same causes of action and requests for relief as the Limited Divorce complaint. Appellee answered in January 1998, with the identical responses as her answer to the first complaint.[5]

## The Circuit Court Findings

Trial was held in the Circuit Court for Anne Arundel County in February 1998, following which the court took the following action:

---

**3.** Appellee claims that she left because the parties could not agree on the terms of their separation.

**4.** Prior to this filing, appellee filed a Counter Complaint for Limited Divorce on the grounds of constructive desertion or, in the alternative, voluntary separation. Appellant answered the complaint in March 1997.

**5.** Appellee also added that she left the home because of health problems.

1. Granted the divorce to appellant on the ground of appellee's desertion.

2. Valued the property, and the businesses, and awarded appellee a monetary award in the amount of $425,000, "to be paid at $30,000 per year, effective April 1, 1998."

3. Found that the irrevocable trust was not marital property because it was "too contingent."

4. Awarded appellee $100 per month in alimony with no termination date.

5. Awarded custody to appellee; ordered appellant to pay child support; declined to award appellant retroactive child support for the short period of time prior to trial that he had custody.

6. Granted appellee the use and possession of the family home, and of the Jeep for a three year period.

7. Granted appellee attorney's fees of $10,000.

8. Awarded full contribution to appellant for the Florida condominium, and 40% contribution for the marital home's expenses.

After various post-trial motions, none of which are relevant to this appeal, the court requested counsel to submit an order reflecting the court's opinions. A Judgment of Absolute Divorce was signed in November 1998. This appeal followed.

### Discussion

### I. Appellant Husband's Appeal

#### A. Justification for Awarding Alimony

█ Appellant contends that the trial court erred in awarding alimony to appellee when she had no ground for divorce. We disagree. The standard of review for alimony awards is the clearly erroneous standard; the decision is upheld "unless the chancellor's decision was arbitrary or his judgment was clearly wrong." *Freese v. Freese,* 89 Md.App. 144, 154, 597 A.2d 1007 (1992).

The trial court held that

the question of alimony is greatly tempered by the monetary award. She is earning about 27% of what he does. The monetary award will put them about equal. We will award the minimal sum of $100.00 per month ... recognizing the need that if, and as when the monetary award is paid, she may then have a greater need.

The court cited *Quigley v. Quigley,* 54 Md.App. 45, 456 A.2d 1305 (1983), and concluded that "just because she left doesn't deprive us of the right to grant alimony. We have to have some grounds of divorce to somebody."

In *Quigley,* the Chancellor held that the wife had not shown a need for alimony and he therefore did not grant the reservation of alimony. On appeal, wife complained that the divorce should have been granted to her and she would then have had "grounds" for alimony.

The *Quigley* court noted that prior to 1980, when the General Assembly enacted the new Maryland Alimony Law, the wife's argument was sound. However, in that year the legislature, after setting forth the factors to be considered in awarding alimony, provided:

The existence of a ground for divorce against the party seeking alimony is not an automatic bar to the Court awarding alimony to that party.

Art. 16 sec. 1(a), now codified in Md.Code, (1999) Fam.L. § 11–103.

■ Clearly a trial court, in the exercise of its judgment, after considering the factors listed in Md.Code, Fam.L. § 11–106, may award alimony to a "guilty" party. Here, the trial judge explained his reasons for the award of alimony, and we perceive no abuse of discretion.

## B. Irrevocable Life Insurance Trust

Appellant asserts that the trial court erred in failing to declare the irrevocable life insurance trust as marital property subject to equitable distribution. This is an issue of first impression in Maryland.

Appellant established the irrevocable trust in 1988, placing in the trust a $600,000 life insurance policy managed by Sovran Bank as Trustee. The trustee controls the policy, and has the discretion as to distribution of the proceeds. The trustee is to pay the net income of the trust to appellee during her lifetime, and also has the right to distribute any or all of the principal to appellee to provide for her care during her lifetime. Upon the death of appellant and appellee, the proceeds of the trust are to be divided among appellant's children. The trust is irrevocable and is not subject to any powers to "alter, amend, modify or revoke."

The trial court held that the irrevocable trust was not marital property:

> ... unlike a revocable trust, these are no longer the property of Mr. Caccamise. *Lynch v. Lynch,* [147 Vt. 574,] 522 A.2d 234 ... under the trust terms, she [appellee] receives payment from the insurance proceeds during her lifetime. The trustee has the right to distribute the property to her for health, medical care, etc. during her lifetime. She can elect $5,000 per year. Upon her death the children are beneficiaries. These are all fairly standard provisions in an irrevocable trust ... we think the interest is too ***contingent*** to be included as marital property. She may not survive him, so the Trust will have no assets. It may well not be expended before she dies. It is too contingent to be counted. If it were, and it should have been counted, its nature would preclude us, in our discretion, from making any monetary award based on this property [emphasis added].

■ Trial courts are required to go through a three step analysis in determining whether to make a marital property award: (1) determining if the property is marital; (2) the value of the marital property; and (3) decide whether a monetary award is appropriate and equitable. *Alston v. Alston,* 331 Md. 496, 629 A.2d 70 (1993). Marital property is "all property however titled acquired by one or both parties during the marriage." Md.Code, Fam. Law § 8–201(e).

■ We agree with appellant that the irrevocable trust was marital property. The trust was started by appellant for the benefit of appellee during the marriage with funds accumulated during the marriage. The trust was funded by life insurance policies, which are recognized as marital property. *Mount v. Mount,* 59 Md.App. 538, 476 A.2d 1175 (1984). In *Mount,* the appellant argued "that the chancellor erred in failing to include as marital property either the value of appellee's life insurance /retirement policy in the face amount of $20,000.00, or the value of his $60,000.00 life insurance policy." *Mount,* 59 Md.App. at 550, 476 A.2d 1175.

This court held

> Both of these policies should have been included in the evaluation of the marital property. The life insurance retirement fund was initiated in 1964. The parties were married in 1974, and divorced in 1983. Since appellant made weekly payments of $11 on this policy from 1974 to 1983, it is clear that part of the value was acquired during the marriage. Applying the source of funds theory, *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982) . . ., that part of the value of the life insurance retirement fund acquired during the marriage should have been included as marital property. Although the status of the $60,000 life insurance policy is not as clear, there is sufficient evidence in the record to indicate that some premiums were paid after the marriage and to the extent that they were, the value so established should be included as marital property.

*Id.* at 550, 476 A.2d 1175. The *Mount* Court remanded and stated that "it will be necessary for the chancellor to determine what the ratio is between the amounts of premiums paid on these policies during the term of the marriage, against the amounts paid before the marriage, and the relation of this to the cash values of the policies at the time of the divorce." *Id.* (citing Harper, *supra* ).

We are also persuaded by a recent case decided by the Supreme Court of North Dakota, *Fox v. Fox,* 592 N.W.2d 541,

1999 N.D. 68 (1999). The North Dakota Supreme Court looked to the decision reached in *Herrick v. Herrick*, 316 N.W.2d 72 (1982) [6] in stating that "generally trusts are includable as marital property subject to equitable distribution by the trial court ... however, this court has also held when receipt of future benefits is too speculative, the potential benefits should not be valued as assets in the marital estate." *Fox, supra*, 592 N.W.2d at 546. *See Herrick, supra.* The *Herrick* court's rationale, adopted in *Fox*, reasoned that despite the fact that the wife did not make financial contributions to the trust, her contributions by means of "employment, effort and support to establishing" the funds rendered the trust marital property because

> in making a division of the property, the marriage status and obligations arising therefrom, as a whole, must be considered.

*Herrick*, 316 N.W.2d at 74 (citing *Keig v. Keig*, 270 N.W.2d 558 (N.D.1978)).

We agree with the North Dakota Supreme Court cases of *Herrick* and *Fox* and hold that an irrevocable life insurance trust created by one spouse for the other during the marriage is the marital property of the beneficiary spouse because of the parties "marital status and obligations." We therefore vacate the judgment of the monetary award. On remand, the court should determine the value of the irrevocable life insurance trust to be included as marital property.

## C. Retroactive Child Support

Appellant contends that the trial court erred in failing to award him retroactive child support. The trial judge said:

> As indicated, he was paying for the property without assistance. She paid no child support. He paid no alimony. At this point we don't believe we should make either of the latter retroactive. Of course, future child support depends on the disposition of the child.

---

**6.** *Herrick* involved the distribution of a profit sharing trust established by the husband.

■ "As a general rule, the amount of a child support award is governed by the circumstances of the case and is entrusted to the sound discretion of the trial judge, whose determination should not be disturbed unless he acted arbitrarily in administering his discretion or was clearly wrong." *John O. v. Jane O.,* 90 Md.App. 406, 601 A.2d 149 (1992). In *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992), the Court of Appeals stated that "while [child support] awards ... will be disturbed only if there is a clear abuse of discretion, a reviewing court must also be mindful that the federal call for child support guidelines was motivated in part by the need to improve the consistency of awards." *Id.* at 331, 609 A.2d 319.

■ Maryland law provides for the awarding of retroactive child support in § 12–101 of the Family Law Article:

The Court *may* award child support for a period from the filing of the pleading that requests child support [emphasis added].

*Id.* Although retroactive support is allowed, it is by no means mandatory. The trial court has discretion whether to award support retroactively, and we do not believe that there was an abuse of discretion in the present case. Appellant had custody of the child; however, his income was considerably more than appellee's and his financial condition was not so dire that he could not support his child for those few months on his own. The court did not abuse its discretion in failing to make the child support award retroactive. *Dunlap v. Fiorenza,* 128 Md.App. 357, 738 A.2d 312 (1999).

### D. Use and Possession of Third Party's Property

Appellant argues that the trial court erred in granting the appellee the use and possession of a Jeep owned by appellant's business, Technigraphics, Inc. At the time of the award, appellant was the only stockholder of the business. Appellee had been using the vehicle during the marriage with appellant's permission, and continued to do so after the separation. Because the trial judge decided that the child should remain primarily with appellee, he granted her use and possession of the family home and the vehicle for a three year period.

■ Maryland provides for use and possession awards "when the court grants an ... absolute divorce, regardless of how the family home or family use personal property is titled, owned, or leased." Md.Code, Fam. Law § 8–208(a). The court may exercise these powers pendente lite. *Id.* We agree with appellant that use and possession of the Jeep owned by appellant's business should not have been granted because the vehicle did not qualify as family use personal property within the use and possession statute:

(1) "Family use personal property" means tangible personal property: (i) acquired during the marriage; (ii) *owned by 1 or more of the parties;* and (iii) used primarily for family purposes. (2) "Family use personal property" includes: (i) motor vehicles ... (3) "Family use personal property" does not include property: (1) acquired by inheritance or gift from a third party; or (ii) excluded by valid agreement [emphasis added].

Md.Code, Fam. Law § 8–201(d)(1). The Jeep in the instant case was owned by the business and not one of the parties.

### E. Attorney's Fees

■ Appellant argues that the trial court erred in awarding attorney's fees to appellee, when it held:

His income is much greater than hers, and he has far better access to additional funds. We believe it appropriate to award $10,000 as a contribution towards counsel and expert fees. The difference between this and the last category is $1,725 in her favor, which can be paid within 30 days.

"The award or denial of counsel fees is governed by the abuse of discretion standard." *Doser v. Doser,* 106 Md.App. 329, 359, 664 A.2d 453 (1995).

■ Appellant first asserts that the outcome of appellee's case precludes the award of attorney's fees. He argues that because the court found that appellee had no ground for divorce the court abused its discretion in awarding $10,000 to appellee. Further, he contends that attorney's fees cannot be

awarded for alimony. The Family Law Article of the Annotated Code of Maryland, § 11–110 provides

> Proceeding *includes a proceeding for (i) alimony* ... at any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding [emphasis added].

Furthermore, § 12–103 provides for the award of costs and counsel fees in a child support case. Appellee was thus not precluded from receiving attorney's fees.

▮▮▮ Appellant also argues that the trial court failed to go through an analysis before awarding attorney's fees and that the value assigned to the fees was incorrect. Before awarding attorney's fees, the trial court must consider "(1) the financial resources and financial needs of both parties; and (2) whether there was substantial justification for prosecuting or defending the suit." Md.Code, Fam. Law § 11–110. See also Fam. Law § 12–103. We hold that the circuit court did not abuse its discretion here. The trial judge stated in his opinion that he considered the financial situations of the parties. In the record transcript, appellee counsel stated that her fees for the suit were up to $13,000 not including the five days of trial. The court then awarded $10,000, which it believed were reasonable and necessary expenses. There was no abuse of discretion.

## II. Appellee Wife's Cross–Appeal

### A. Voluntary and Mutual Separation

▮▮▮ Cross–Appellant ("Appellee") asserts that the trial court erred in failing to find a voluntary and mutual separation as the ground for the parties' divorce. A court may decree a divorce on the ground of voluntary separation if:

> (i) the parties voluntarily have lived separate and apart without cohabitation for 12 months without interruption before the filing of the application for divorce; and (ii) there is no reasonable expectation of reconciliation. MD. CODE.ANN., Fam.Law § 7–103(a)(3).

The trial court concluded:

We cannot find it a voluntary separation. We believe Mr. Caccamise never wanted the separation to occur. Part of this may have been because he didn't want to go through the horror story of a divorce which unfolded before us, but we cannot question his motives. Mrs. Caccamise left. . . .

We refuse to upset the trial court's decision because appellant's testimony revealed that appellee was the party who left the marriage and we find nothing in the transcript of appellee's testimony to indicate otherwise.

### B. Monetary Award and Method of Payment

■ Appellee asserts that the trial court erred in determining the monetary award and method of payment. It is well settled that "a trial court decision in granting a monetary award will not be overturned unless the judgement is clearly erroneous and due regard will be given to the trial judge's opportunity to judge the credibility of the witnesses." *Gallagher v. Gallagher,* 118 Md.App. 567, 580–1, 703 A.2d 850 (1997).

Appellee objects to the court's evaluation on several grounds. We turn to a discussion of these points.

1. The trial court evaluated all the property and determined that husband's net marital assets totaled $950,000.00. Appellee argues that her marital asset award should have been $475,000.00 or one half.

■ Upon the dissolution of most long term marriages, the trial judge divides the marital property equally. This is not required, *Deering v. Deering,* 292 Md. 115, 131, 437 A.2d 883 (1981), but has become the practice. The court, after a consideration of the factors listed in F.L. § 8–205, may decree an unequal division and state the reasons for such an allocation. Here, the trial court, explaining the disparity, said:

Considering all the work he put into the business, the age of the parties, and all other relevant factors, we believe $425,000 is reasonable.

Because the parties were 51 and 52 years of age at the time of the trial, we fail to see what significance the trial judge attached to that. As to the second point, the working spouse would normally be the one putting time and energy into the business. The trial judge here did not enumerate what work the husband had done beyond the ordinary which would account for uneven portions. Finally, the court considered "all other relevant factors." The judge, however, did not set forth what other relevant factors he considered so that we could determine whether there was an abuse of discretion in the division of the martial property. The Family Law Article § 8–205 sets forth eleven factors that the court is to consider in making a monetary award. On remand, the court should set forth which factors influenced an unequal division of the marital property.

2. As to the payment of the monetary award, the court held:

> How should this be paid? A business is not a liquid asset. We believe it ought to be paid at $30,000.00 per year, effective April 1, 1998.

We first observe that the method of payment is entrusted to the sound discretion of the trial judge. Here, the payment is to take place over a period of fourteen years and no interest is to be paid. The purpose of the award is to put the parties in roughly equal financial positions, and indeed the trial judge stated that was his intent. We fail to see how a payout of $30,000.00 per year over a fourteen year period with no interest accomplishes that goal. As this Court held recently in a case in which the division of the marital property was grossly disproportionate:

> The judgment here defeats the purpose of the monetary award, which is to achieve equity between the spouses where one spouse has a significantly higher percentage of the marital assets title [in] his name.

*Long v. Long,* 129 Md.App. 554, 743 A.2d 281 (2000).

What is true of the division of the monetary award applied equally to the method of payment. While an immedi-

ate payment in full is not required, the terms of the payment must be fair and equitable. We therefore vacate the judgment. On remand, the trial judge should determine, after a hearing if necessary, whether the award can be paid in a more expeditious manner or, if not, whether a reasonable amount of interest should be paid to appellee for the period of time she is required to wait to collect the amount the court determines is due her.

3. Appellee objects to the trial court's statement:

The 401(k) plan is his, is worth $66,735.00 and will be divided on an "if, as and when" basis, and isn't part of the equation.

The court's evaluation of appellant's pension was not in error. Appellee suggests in her brief that since the court did not consider appellant's pension as part of the parties' position he was in error. Even a cursory reading of the transcript discloses that the court did not "ignore" the pension. The court specifically decreed that it would be paid on an "if, as, and when" basis. This is permitted by Family Law § 8-204(b)(2), which provides that if a party objects to the distribution of retirement benefits on an "if, as and when" basis that party shall give written notice that he or she intends to present evidence of the value of the benefits. If no notice is given, then any objection to such a distribution is waived.

Here, no notice was given by appellee. The court did not abuse its discretion.

4. Finally, appellee objects to the court's concededly incorrect evaluation of the sale of the Tampa, Florida condominium, in which the court considered the proceeds to be $12,402.00 to each party when, in fact, it was $12,402.00 total. The trial judge agreed that this was in error but made no adjustments for it in the final order. As this matter will be remanded, the court can make the appropriate correction.

## C. Amount of Alimony Award

Appellee also contends that the trial court erred in only awarding her the "minimal amount" of $100 per month in alimony. The trial court concluded:

The question of alimony is greatly tempered by the monetary award. She is earning about 27% of what he does. The monetary award will put them about equal. We will award the minimal sum of $100 per month, effective April 1, 1998, recognizing if, as and when the monetary award is paid, she may then have a greater need.

The trial court clearly considered the monetary award to appellee in determining an amount for alimony. In *Campolattaro v. Campolattaro*, 66 Md.App. 68, 502 A.2d 1068 (1986), this Court held that "alimony and a monetary award are significantly interrelated and largely inseparable. The decision to award one or both must be made after a consideration of them in their mutual context." *Id.* at 75, 502 A.2d 1068 (citing *Cotter v. Cotter*, 58 Md.App. 529, 534, 473 A.2d 970 (1984)).

Appellee's contention that the alimony award was inequitable is unfounded. "Whether an award of alimony, either as to amount or duration, is grossly inequitable, can only be determined in light of all the factors in the case, including the monetary award made . . . ." *Id.* Therefore, "it is thus patent that any disposition we might make with respect to the monetary award will most assuredly affect any alimony award made." *Id.* We agree with the trial court's decision to factor in the monetary award in the alimony determination.

### D. Contribution for Condo and Marital Home

Finally, appellee contends that the trial court erred in its finding as to contribution from appellee to appellant for the Florida condominium and the marital home. The trial court's findings were as follows:

He seeks contribution on the family home and the Tampa property. With regard to Tampa, we believe he is entitled to full contribution. The property had to be kept going until it was sold. That amounts to $4,275. We do not have the same thoughts with regard to the marital home. He lived in it, along with their daughter, while she

had to get other lodging. We believe he is entitled to some credit because he had to pay interest which he can't recover. Without knowing exact amounts, we believe he is entitled to about 40% of what he was paying of $4,000. He shall receive total contribution of $8,275.

 Contribution is a part of traditional English law regarding co-tenancies that was adopted in Maryland and applied to tenancies by the entireties. "Generally, one co-tenant who pays the mortgage, taxes, and other carrying charges of jointly owned property is entitled to contribution from the other." *Aiello v. Aiello,* 268 Md. 513, 518–9, 302 A.2d 189 (1973). There are four exceptions that preclude contribution; namely (1) ouster; (2) agreements to the contrary; (3)payment from marital property; and (4) an inequitable result.

 We affirm the decision reached by the trial court, as it was not clearly erroneous. "We will not substitute our judgment for the trial court's determination of the credibility of the witnesses." *Keys v. Keys,* 93 Md.App. 677, 614 A.2d 975 (1992). The *Keys* court affirmed a decision limiting appellant's contribution when the facts in the case were disputed. The court rationalized its decision by deferring to the trial court's better understanding and evaluation of the facts:

> We are bound by this oft enunciated principle, especially in the arena of marital disputes where notoriously the parties are not in agreement as to the facts, and therefore, we must be cognizant of the court's position to assess the credibility and demeanor ... and since the court had before it sufficient evidence from which it could conclude by a preponderance [of the evidence.]

*Id.* at 688–89, 614 A.2d 975. Similarly, the trial court in the case sub judice had sufficient evidence before it to make the most efficient determination as to whether appellant was deserving of contribution, and how much. We are unable to conclude that the court's decision was clearly erroneous.

**JUDGMENT AFFIRMED IN PART; VACATED IN PART; CASE REMANDED TO THE CIRCUIT COURT**

FOR ANNE ARUNDEL COUNTY FOR FURTHER PRO-
CEEDINGS; COSTS TO BE PAID EQUALLY BY BOTH
PARTIES.